## C. A. DESLOGE *et. als.*, Defendants in Error, *v.* PEARCE & WILLOUGHBY, Plaintiffs in Error.

1. *Lands—Licence—Statute of Frauds—Landlord and Tenant.*—A parol licence, or mere verbal privilege, carries no interest in land, and is a mere authority or privilege to do some particular acts upon the land of another. But a licence to work mines confers not only a right to enter and occupy, but to commit waste and carry away part of the realty itself, and is therefore an interest in lands, tenements and hereditaments within the statute of frauds; and must, in order to give any permanent heritable interest in the realty itself, or any right to a continued and perpetual possession, be put in writing and signed by the parties, or be given by deed; otherwise it can have no other or greater effect, either at law or in equity, than to create an estate at will. A parol licence is essentially revocable at will, and may be terminated under the statute by giving notice to remove. The right to enter and dig for ores is an incorporeal hereditament, and can only be acquired by deed, or by an adverse enjoyment for a sufficient length of time to furnish a presumption of a grant; but in all cases, to raise a presumption of a grant, the possession must be adverse.

2. *Landlord and Tenant—Notice to Quit.*—To terminate a general tenancy at will, one month's notice to quit is sufficient. (R. C. 1855, p, 1012, § 13.)

### *Error to Washington Circuit Court.*

This was a suit of ejectment, instituted by plaintiffs as heirs of Firman Desloge, to recover the possession of a piece of ground, about one half of an acre in extent, the orifice or landing-place of a shaft known as Pearce & Willoughby's shaft. It also includes a prayer that defendants be restrained from taking out the mineral from the shaft, the plaintiffs, as owners of the land, claiming to be the owners not only of the mine, but of the right to work it. The plaintiffs gave six months' notice to quit before bringing their suit.

Defendants relied upon the general custom of the country which they established to have existed during French and Spanish times, and to have continued down to the present time, whereby a distinction is made in the propietary title to the fee of the land and the miner's right to dig for mineral. By the custom, any one could go upon lands thrown open to mining and "prospect"; and if successful, could then mine, and was entitled to a certain space of the surface land around

the shaft, paying, by way of rent to the proprietor of the fee, a certain percentage of the ore; which ore (by a custom grown up since 1849) was left by the miner for the proprietor in the hands of the smelter to whom he sold his ore.

The custom established certain rules whereby the miner was compelled to work the mine with diligence or forfeit his rights, but which need not be mentioned here inasmuch as the court in its instructions ignored the custom.

The testimony for the defence proved clearly, not only that this custom was general throughout the mining districts, but that defendant Pearce as early as 1835 commenced these mines and had continued them up to the institution of the suit, the defendant Willoughby having been associated with him since 1842; that during all this period the custom had been observed between the defendants, of the one part, and Firman Desloge, ancestor of the plaintiffs; Desloge accepting the rent in ore delivered to the smelters, and refusing to sell his title to the lands except upon the express understanding that he did not sell the miners' right of defendants.

Jones had, previously to the defendants, prospected and mined these same lands, but unsuccessfully.

The court of its own motion gave the following instructions, to which the defendants excepted:

· The jury are further instructed that if they believe from the evidence that Firman Desloge, the ancestor of the plaintiffs, gave permission to the defendants to enter upon said tract of land, to dig and prospect for mineral, and that the defendants did, by reason of said permission, enter upon said tract of land and expend large sums of money in prospecting, sinking shafts, &c., then the licence so granted is executed, and is not revocable at the will of the grantor or those claiming under him, and the jury will find for the defendants unless it is proven that the plaintiffs have given three months' notice to the defendants to quit, and offered to pay them all necessary expenses they have incurred in digging of shafts, &c. But they will take into consideration the

length of time the defendants have had to work out their claim and the profits made by them from the mineral dug out of the same; and if they find that the profits exceeded the expense, and that the defendants have been rewarded for their labor and risk, then the plaintiffs' are not bound to give the notice to quit.

The defendants asked of the court to give the following instructions, to-wit:

1. If the jury believe that there was no special arrangement between the ancestor of the plaintiffs and the defendants for the payment of the rent on the mineral raised, through the smelter at Perry's Furnace or other purchasers of the mineral, but that they should find that such was the custom, and that the defendants did after the death of the plaintiffs' ancestor cause the rents due on all the mineral raised on the land in question to be so returned, with directions for the same to be paid to those entitled, then plaintiffs cannot recover for rents in this action.

2. The jury are instructed that the extent as to quantity and duration in point of time of a miner's right, in the absence of any special arrangement between the miner and the proprietor, is a matter to be determined and regulated by the custom prevailing in that behalf in the particular locality where the right attaches; and when it appears that such right has attached with the consent of the proprietor, then it continues and is obligatory upon all persons claiming under such proprietor until forfeited or otherwise determined by the act or consent of the miner; and if the jury find that such right existed in the defendants at the time of the commencement of this action, then the plaintiffs cannot recover, and they will find for the defendants.

3. If the jury believe that the ancestor of the plaintiffs made arrangements with the defendants for the rents due on the mineral raised on his land by defendants, to be retained in the hands of the smelter at the Perry Furnace, and that the defendants complied with that arrangement after the

death of plaintiffs' ancestor up to the bringing of this suit, then they cannot recover for rents in this action.

Which instructions the court refused to give, to which refusal the defendants excepted.

The jury having found a verdict for the plaintiffs, defendants moved for a new trial for the errors of the court in the instructions given and refused.

*Garesché & Mead*, for plaintiffs in error.

I. Simply as a question of tenancy, and without reference to the custom, the case should be reversed. For "a general letting without any limitation as to time, although the payment of the rent be quarterly or monthly, is in construction of law a letting from year to year." A tenancy at will must be created by express contract, for if the terms are indefinite it will be a tenancy from year to year. In the absence of proof, the legal presumption remains that the tenancy is a yearly one—Ridgeley v. Stillwell, 25 Mo. 571, and cases there cited; Tayl. Land. & Ten. p. 35, § 59 & 60.

To terminate the tenancy, a notice should have been given of not less than three months next before the end of the year—R. C. 1865, p. 739, § 12; R. C. 1855, p. 1012, § 12.

A notice is insufficient if not given at least three months prior to the period of the year at which the tenancy commenced—Tayl. Land. & Ten. p. 310, § 475.

The proof was that notice was given six months before the suit was brought, and the 6th instruction for the plaintiffs is therefore evidently erroneous.

II. The custom, limiting as it did the miner's right to "surface land"—imposing upon him a percentage of the ore as a toll to the proprietor—and requiring the diligent working of the mine—was reasonable. It is a common occcurrence in mining districts for the ownership of the land to be vested in one person, and the ownership of the mines in another.

"In all freehold lands, an adverse claim to the mineral" must be distinctly established against the owner of the sur-

face. This may be effected by documentary evidence; or, in the absence of documentary evidence, or in opposition to such evidence, a title to them may be made out by proofs of acts of ownership and length of possession—Bainb. on Mines, p. 5; Stewart v. Chadwick, 8 Clarke (Iowa), 468.

By custom, a title can be acquired to mines—74 Law Lib., Coll. on Mines, p. 21, § 17; Bainb. on Mines, 28.

In Curtis v. Daniel, 10 East. 273. Ld. Ellenborough says: "Why there may not be two customs, one for the lord of the manor to have tin, and another for these tenants to have the copper under their estates, and waste in question." "The usage which establishes the right of the lord will also that of the tenant; and here has been an adverse possession of the copper mines by these tenants for above twenty years past."

In Barnes v. Mawson, 1 Maule & Sel. 77, by Ld. Ellenborough—"that one may have a freehold title to the land, and another the exclusive right of the mines in it. And that he could show by evidence of general reputation, as well as acts of taking coal under the lands of other freeholders within the same boundary, that the right to the coal was in the lord."

A custom like that upheld by appellants exists in Cornwall, and was good—Rogers v. Brenton, 10 Q. B. 26; Adol. & Ell. (N. S.) 40; Coll. on Mines, pp. 22–41; Bainb. Mines, p. 456 & 468; McGarrity v. Byrington, 12 Cal. 427.

III. No evidence being offered of the particular demise to defendants, recourse must be had to the custom to define it.

Every demise between landlord and tenant in respect to matters in which the parties are silent, may be fairly open to explanation, by the general usage of the country, or the district where the land lies. Every person under such circumstances is supposed to be cognizant of this custom, and to contract with a tacit reference to it. Hence a tenant could remove valuable buildings—Van Ness v. Paccard, 2 Pet. 148; Keagh v. Daniel, 12 Wis. 163.

Local custom is admitted to explain the termination of a

written lease—Wilcox v. Wood, 9 Wend. 349; (Parol lease) Moore v. Eason, 11 Ired. 568. So in case of a written lease custom may be shown that the tenant is entitled to the way-going crop—Stultz v. Dickey, 5 Binn. 285; also Foster et als. v. Robinson, 6 Ohio, (N. S.) 95, and cases quoted; Templeman v. Biddle, 1 Harr. 522. Or, to be paid for his labor on the land—Womersley & Dally, 40 Eng. L. & Eq. 488.

Parties are always presumed to contract with reference to a general custom or usage—Bartin v. McKelway, 2 Zab. 175; Soutier v. Kellermon, 18 Mo. 509; Martin v. Hall, 26 Mo. 386. And where hiring was general, term fixed by the custom—Gleason v. Walsh, 43 Me. 397.

Mining claims are held by possession, but that possession is defined by usage and local and conventional rules—Atwood et als. v. Fricot, 17 Cal. 43.

Such a custom is not within the statute of frauds, because no divestiture of title, but a mere occupancy and user of the ground—Gore v. McBrayer, 18 Cal. 589; Table Mt. Tunnel Co. v. Stranahan, 20 Cal. 208. And that the licence is not revocable—Gillett v. Treganga, 6 Wis. 343.

IV. Immemorial time is the term prescribed by the statute of limitations—1 Greenl. Ev. § 17, and note 1 in margin. In this State, ten years.

V. After an user as in this case of over ten years (from 1835 to 1859, twenty-four years), the jury were at liberty to presume a grant.

The term for a prescription, or prescriptive grant, is the local period of limitation for quieting titles—3 Crui. Dig. 217, n. 1, & 485, n. 43; 2 Greenl. Ev. §§ 538–9 & 546; Biddle v. Mellon, 13 Mo. 335.

A person has no right to diminish or to obstruct the flow of a stream " without a grant, or an uninterrupted enjoyment of twenty years, which is evidence of it"—3 Kent's Com. 439; Ibid. of Easem. 441–2; McCalmont v. Whittaker, 3 Rawle, 90; McBee v. Lofters et al., 3 Strob. Eq. 94.

A writing granting not the soil in fee, but the use only for the purpose of mining, is not a deed for the conveyance of

land—Stein v. Burden, 24 Ala. 148;- Miller v. Garlock, 8 Barb. (S. C.) 154; Tyler et als. v. Wilkinson, 4 Mass. 402; Gleason v. Tuttle, 46 Me. 288; Win. Lake Co. v. Young, 40 N. H. 435; Ray v. Fletcher, 12 Cush. (Mass.) 200; Jones v. Crow, 32 Penn. 398; Carlyon v. Levering, 40 Eng. L. & E. 448; Race v. Ward, 7 Ellis & Black, 382; Murgatroyd v. Robinson, 7 Ellis & B. 391.

Or even of a right to land on another's shore to dry nets —Gray v. Bond, 2 Brod. & Bing. 667.

That after fifteen years (term of limitation) it would not be revocable—Arbuckle v. Ward, 29 Vt. 43.

A grant may be presumed even in the case of a statutory requirement, that it should be a written record—Durham v. Durham, 26 Mo. 507; Miller, adm'r, v. Reigne, 2 Hill (S. C.) 592. Or even of an act of the Legislature when not derogatory to the policy of the State—Vinyard v. Passalaique, 2 Strobh. 536; Lewis v. Haite, 33 Mo. 535.

VI. "Adverse" means only "by color of right."—See cases above cited, and Miller v. Garlock, 8 Barb. (S. C.) 154. Nor does the payment of toll make it *less* "adverse"—Bainb. on Mines, 35.

*Dryden & Lindley*, for defendants in error.

I. The right claimed by the defendants is an interest in the land, or it is an easement. Whether it be an interest or easement, for the purpose of this case is unimportant.

"It seems to be settled that the right to enter and remain on another's land for a certain time, or indefinitely, at the pleasure of the party claiming the privilege, is an interest in the land"—Fuhr v. Dean, 26 Mo. 120.

The right claimed by the defendants was the right to enter upon the land in controversy, and to occupy and possess the same, and to dig and take therefrom the mineral therein permanently, or for a period of time entirely indefinite, depending wholly upon their will and pleasure, they rendering and paying rent, &c.

II. The right claimed by the defendants being an easement, or an interest in the land, can be created only by writing—Fuhr v. Dean, 26 Mo. 119; Arnold v. Stevens, 24 Pick. 109.

There is no pretence that the privilege claimed by the defendants here was created by writing; on the contrary, the origin and existence in parol are expressly avowed.

III. The right claimed by the defendants being an easement, or an interest in the land, created by parol and not put in writing, is an estate at will only—§ 1, Stat. of Frauds, R. C. 1855, p. 806.

IV. But to obviate the objection that the defendants' interest was created by parol only, and to enlarge their estate, the defendants rely upon what they call "the miner custom," by which they claim the privilege of holding the plaintiffs' land, and digging and removing the mineral therefrom, for a period of time indefinite, depending wholly upon their free will and pleasure.

We reply, the alleged custom is *illegal*, and therefore insufficient to justify the defendants' possession after notice to quit.

A necessary requisite to the goodness of a particular custom, says Sir Wm. Blackstone (1 Bl. Com. 76), is, 1. "That it have been used so long that the memory of man runneth not to the contrary; so that if any one can show the beginning of it, it is no good custom. For which reason no custom can prevail against an express act of Parliament, since the statute itself is a proof of a time when such a custom did not exist."

" To take a case out of the operation of a general principle, a usage should have every requisite to give it validity. It must be ancient, certain, uniform, and reasonable. And although a usage is often resorted to for explanation of commercial instruments, it never is nor ought to be received to contradict a settled rule of commercial law"—3 Watts, 179.

Note 21, p. 79, Book I., Sharsw. Bl. Com., Judge Sharswood says : " In some of the States, as in Pennsylvania for instance, general customs and usage on certain subjects prevailed to such an extent as to produce a distinctive common law. In very few of the States, however, do any mere local customs exist such as are treated of by the commentator in this section; they, however, are to be carefully distinguished from usages of trade or business. These are everywhere allowed their just influence and operation.

A usage of trade and business clearly proved to exist, to be ancient, notorious and reasonable, and consistent with law, is permitted to explain the meaning of ambiguous words in written contracts, and to control the mode and extent of their rights where the parties have been silent; but it is never admitted against the expressed agreement of the parties, nor in violation of any statute or well established rule of law. Perhaps in some cases the courts have gone further than is here indicated, but the current of judicial decisions of late years has been to restrain and limit the allowance and influence of special usages.

The custom relied upon by the defendants is in the teeth of the statute of frauds and perjuries. No custom can be sustained in opposition to the established rules of law—Frith v. Barker, 2 John. 335.

" The usage of no class of citizens can be sustained in opposition to the principles of law"—Homer v. Dorr, 10 Mass. 29.

V. The defendants being in as tenants at will of the plaintiffs, it was competent for the plaintiffs to put an end to the tenancy by one month's notice to quit—Land. & Ten. § 13, p. 1012, R. C. 1855. (Plaintiffs gave six months' notice to quit.)

VI. The instruction given by the court of its own motion, and excepted to by the defendants, was more favorable to the defendants than their case justifies, and they have therefore no right to complain of the action of the court in giving it.

That branch of the instruction which made the plaintiffs' right to recover to depend upon whether the defendants had been reimbursed their expenses, labor and risk in working the mines, was the imposition of a condition which the law did not warrant. If the defendants entered as supposed by the instruction—and that they did is admitted by the pleadings, and the plaintiffs gave the notice supposed to quit—the plaintiffs were entitled to recover without regard to the other conditions of the instruction.

VII. The second instruction asked by the defendants and refused by the court was bad in that it assumes that a local custom will override the law of the land.

HOLMES, Judge, delivered the opinion of the court.

This was an action of ejectment for the possession of land in which the defendants were working a lead mine. The answer denies the plaintiffs' right to the possession, or to damages. It alleges by way of defence, first, a grant from the ancestor of the plaintiffs to one of the defendants, in 1835, for mining lead ore, with authority to sink shafts and raise mineral, and with the privilege of taking the same to his own use, paying to the grantor one tenth of the lead or ore, and that afterwards the other defendant became a joint owner in the grant; and that they had enjoyed the possession and privilege and worked the mines for more than twenty years, and expended large sums of money ; and second, a licence from the ancestor of the plaintiffs to the like effect; and third, a right to hold the premises and continue their mining operations by the custom of miners, existing in the region of the lead mines of Missouri as far back as the year 1720, and the nature and particulars of the custom are fully set forth ; and that they have worked said mines and paid the customary one tenth to the ancestor of the plaintiffs, and to his administrators after his decease, from the beginning of successful operations down to the present time.

They allege further that they had sunk a shaft to the depth of one hundred and twenty feet, and made drifts some two

or three hundred feet in length, and erected whims and fixtures at a considerable expense of labor and money; and they claim the right by virtue of said grant, licence, or custom, to remain in possession and continue working the mines as heretofore·; and pray for judgment, if ejected, for the value of the work done and for the present value of the mine.

The evidence failed to show any grant, and tended to prove that the defendants entered and commenced working the mines under a mere parol licence or verbal privilege, paying the licence or one tenth of the ore raised, and that they had continued their operations under this privilege to the present time. The existence of a custom among miners, extending back to Spanish times, to appropriate mining claims on unoccupied lands, and work the same on similar terms, was fully proved; but the evidence failed to show any existing right by custom (or otherwise than by virtue of the parol licence) extending beyond the period of the statute of limitations.

It appeared from the evidence that the defendants had been working this mine for more than ten years next before the commencement of this suit, under the licence or privilege from the plaintiffs and their ancestor, paying them the one tenth of the ores or lead raised. There was no proof of any adverse claim or possession under any supposed grant by deed, or under any immemorial custom, other than the right and possession held under the licence; and it was proved that the plaintiffs had given them six months' notice to quit and remove.

Instructions were given for the plaintiffs as to their right to recover upon the notice to quit, and as to damages. In one of these instructions the jury were told that they might take into consideration the length of time the defendants had had to work out their claim, and the profits made by them; and that if they found that the defendants had been rewarded for their labor and risk, the plaintiffs were only bound to give them notice to quit.

Instructions for the defendants in relation to the recovery

of rents under the licence as damages, and upon the effect of the custom of miners as a foundation of right in the defendants, were refused. This instruction was as follows:

" 2. The jury are instructed that the extent as to quantity and duration in point of time of a miner's right, in the absence of any special arrangement between the miner and the proprietor, is a matter to be determined and regulated by the custom prevailing in that behalf in the particular locality where the right attaches; and when it appears that such right has attached with the consent of the proprietor, then it continues and is obligatory upon all persons claiming under such proprietor until forfeited or otherwise determined by the act or consent of the miner; and if the jury find that such right existed in the defendants at the time of the commencement of this action, then the plaintiffs cannot recover, and they will find for the defendants."

A parol licence, or mere verbal privilege, carries no interest in land, and is a mere authority or privilege to do some particular acts. upon the land of another—Fuhr v. Dean, 26 Mo. 116; Wolf v. Frost, 4 Sandf. Ch. 72; Cook v. Stearns, 11 Mass. 533; Wood v. Leadbitter, 13 Mees & W. 838; 3 Kent's Com. 452; Washb. on Easm. 5. But a licence to work mines is quite a different thing; it confers not only a right to enter and occupy, but to commit waste and carry away a part of the realty itself, and it is therefore necessarily an interest in lands, tenements and hereditaments, which is clearly within the statute of frauds, and must, in order to be effectual to give any permanent inheritable interest itself, or any right to a continued and perpetual possession, be put in writing and signed by the parties, or be given by deed; otherwise it can have no greater force or effect than to create an estate at will only, either at law or in equity—R. C. 1855, p. 806, § 1; Wolf v. Frost, 4 Sandf. Ch. 72; Coll. on Mines, 7 (74 Law Lib. 16); Bainb. Mines, 83. A parol licence cannot be made the foundation of any right or interest in real estate, or to the future continuous possession thereof, nor to a continuation of the privilege be-

yond the will of the owner of the land. It is essentially countermandable and revocable at will—Cook v. Stearns, 11 Mass. 533 ; 4 Sandf. 72; Washb. on Easm. 19 ; 2 Am. Lea. Ca. (3d ed.) 701.

Even if such an arrangement could be considered as creating a tenancy at will, or by sufferance, it might be terminated, under the statute, by giving one month's notice to remove—R. C. 1855, p. 1012, § 13. Six months' notice were given in this case, though without reference to the end of a year. There may be a tenancy at will by the year, or by the month, but such tenancy must be created by express contract—Ridgeley v. Stillwell, 25 Mo. 570. There was no evidence in the case on which the idea of a leasing for any given term, or a tenancy by the year or by the month, can be founded. This arrangement could have no other effect than to create an estate at will generally, without regard to any holding by the year.

Such a licence, so far as executed, would protect the defendants against an action of trespass as wrongdoers, and against damages for what had been done under the privilege given, and against damages for not restoring or replacing what had been changed or altered under the privilege—Pierpont v. Barnard, 2 Seld. 279; Sampson v. Burnside, 13 N. H. 264; Lygins v. Juge, 7 Bing. 682; 2 Am. Lea. Ca. 697–99, 3d ed. In many cases, it is held that where a party has, under a parol licence, placed his own property on the lands of another for certain specific purposes, as mill-dams, aqueducts, bridges, houses, fixtures, or other things which (without some special agreement) might become a fixed part of the realty, he will be protected against an action of trespass for continuing them or for removing them, and may maintain an action against the owner who gives the licence for interfering with them, in violation of the privilege given. These cases seem to proceed on the ground that these things, which are thus placed on the lands, are to be treated, under the special agreement, as personal property of the licensee, or on the ground of an estoppel *in pais*. Under these au-

thorities, we are inclined to think that the defendants would have a right to remove, at pleasure, their whims, fixtures, or other property of a personal nature, under the terms of the understanding, or by force of any custom or local usage proved to have existed there in relation to such matters, and with reference to which the parties might be presumed to have contracted. But a mere licence unaccompanied with with any vested interest in the real estate created by deed or other writing, and independent of any title acquired by grant, prescription or adverse possession and claim for the period of the statute of limitations, must be deemed to be in its own nature countermandable, and essentially revocable at the will of the owners of the fee. It can give no irrevocable right to hold possession of the realty, and to continue working the mines indefinitely,. and against the will of the owner of the land—2 Amer.. Lea. Ca. (3d ed.) 701; Wood v. Leadbitter, 13 Mecs & W. 838; Wolf v. Frost, 4 Sandf. Ch. 72.

The defendants' instruction in relation to the custom of miners as a foundation of a right to retain possession and continue working the mines in accordance with such custom, or agreeably to the terms of the privilege, was properly refused. How far these local mining customs may have force, when proved to exist, in matters of contract arising among miners, or between them and the owners of the land when they have acquired some right or interest in the mines by deed or other writing not declared void by the statute of frauds, or by any other mode of acquiring title to the possession of real estate, or where (as in California). mining claims are founded upon a prior actual possession merely as the better title, in respect of the construction of contracts which may have been made with reference to such customs, it is unnecessary here to inquire. The custom is not invoked here for aid in interpreting the contracts and agreements of the parties, but as a source and foundation of an absolute right and interest in real estate. Something like a prescription, or custom from the time of legal memory, sup-

posed to have commenced with a *bounding off* of mining claims on waste and unoccupied lands, paying a toll of the ores dug to the owner of the land, and continuing for a period extending back beyond the memory of living witnesses, or beyond the period of the statute of limitations, seems to have existed in the mining districts in England. In Barnes v. Mawson, 1 Maule & S. 77, a tenant of the freehold claimed the mines against the lord of the manor, who relied upon a reservation established, not by documentary evidence, but by acts of ownership and adverse enjoyment as far back as the memory of living witnesses would reach; and the matter was left to the jury on the question of adverse enjoyment and acts of ownership for time immemorial. So in Curtis v. Daniel, 5 East, 273, the right of the tenant of the freehold, as against the lord of the manor, to have the dues of copper mines under the land was made to depend upon acts of ownership and adverse possession of the mines and dues for more than twenty years. In Ryan v. Brenton, 10 Adol. (N. S.) 26, the plaintiff claimed the mines as a "bounder" under the custom of miners, as against other "bounders" showing no title in the premises.

The custom of *bounding* on waste mineral lands was so far recognized as to be allowed as the foundation of a claim, qualified by the condition of continuous working, as against another showing no better title; but that the right ceased when the bounder ceased to work. There would seem to be nothing in these cases which can be invoked in support of the doctrine that a bounder of mines under the custom can acquire any right or title, corporeal or incorporeal, in a mine, as against the true owner of the land, by any possession, enjoyment, or acts of ownership, which are not adverse in character, and continued beyond the period of the statute of limitations. The right to enter and dig for ores is an incorporeal hereditament, and can only be acquired by deed, or by adverse enjoyment for a sufficient length of time to furnish a foundation for a presumption of a grant; but in all cases the possession, in order to raise even the slightest pre-

sumption, must be *adverse*—Arnold v. Stevens, 24 Pick. 106; Bainb. on Mines, 35.

Here, then, is no evidence of any adverse possession or engagement. The evidence shows that the defendants have held the premises by the licence and permission of the plaintiffs and their ancestor, and have always recognized their superior title by paying the customary one tenth of the ores raised.

The plaintiffs sue in ejectment for the possession of the premises, and for damages for the detention thereof since the notice to quit was given. The privilege or licence being in its own nature revocable at will, was revoked and terminated by the giving of the notice to remove. Neither the custom proved, nor the long possession under the licence, can be any bar to a recovery in this action. It does not appear that the plaintiffs have recovered any other or more damages than they were entitled to recover.

The question whether the defendants had worked the mine long enough to reward them for their labor and expenditure was immaterial.

There was no material error in the ruling of the court upon the instructions.

Judgment affirmed. The other judges concur.