FRANK S. GIBSON, Respondent, v. ST. LOUIS AGRICULTURAL AND MECHANICAL ASSOCIATION, Appellant.

**St. Louis Court of Appeals, December 11, 1888.**

**License, Parol: REVOCATION.** A parol license to occupy the licensor's land for an indefinite time cannot be revoked by the licensor, when the licensee has incurred expenses and otherwise placed himself at disadvantage in order to use and enjoy the license for the purpose intended by the parties.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Hitchcock, Madill & Finkelnburg*, for the appellant.

On plaintiff's own showing, he had at best but a parol license to be on the defendant's premises. A license is not an estate in land and may be revoked at any time by the owner of the fee. See Tiedeman on Real Prop., sec. 651 *et seq. ;* See 1 Wash. on Real Prop., *397; *Wood v. Leadbitter*, 15 Mees. & W. 838 ; *Desloge v. Pierce*, 38 Mo. 588. The revocation of a license may involve a breach of a contract; if so, the licensor makes himself liable for the damages growing out of such breach (Tiedeman, secs. 652, 653), but the licensee is nevertheless bound to quit the premises when thereunto requested by the owner of the fee. *Wood v.*

*Leadbitter*, 13 Mees. & W. 838 ; *McCrea v. Marsh*, 12 Gray, 211 ; *Woodman v. Howell*, 45 Ill. 367. Plaintiff should have removed his tables and departed the premises when requested by the defendant to do so, and if he had any contractual rights as against this defendant, he should have sued defendant for damages growing out of the breach of contract, but not for trespass *vi et armis* in being put off the premises. A license is personal in character, and cannot be assigned without the assent of the licensor. Even if Mrs. .Donahoe had a license for the right here claimed, she could not assign it to plaintiff without defendant's consent. Tiedeman, sec. 651 ; 1 Washburn, \*399, sec. 9.

*Cochran, Dickson & Smith*, for the respondent.

Section 3078, Revised Statutes, provides that all contracts for the renting or occupation, etc., of any stores, shops, buildings, etc., in cities, not in writing, shall be deemed tenancies from month to month. In 'the present case, the letting involved the right of the purchaser of a booth, as proved by the evidence and established to the satisfaction of the jury, and such other persons, not exceeding five in all, as might acquire interests in the booth, to occupy and use as stores or shops the booths themselves and also a space of ground in front of such booths. In *Fuhr v. Dean*, 26 Mo. 116, the court say : "A mere license may exist by parol, and ordinarily is not assignable, and is revocable unless it has been executed and the party has incurred expense on the faith of it so that he would be injured by its revocation." In the present case, not only was there an injury by plaintiff's objection, but as his loss was one of profits he can have no recovery for such loss. Again, in the same case, page 120, the court quotes with approval from Kent's Com. : * * * "If, after A. has given his consent and before B. has entered upon

the land, A. changes his mind, he has a right to do so and forbid B. from entering upon his land for the specified purpose. The license is thus far executory, and may be revoked at pleasure. If B. afterwards enters he is a trespasser. If, however, B. enters before any revocation of the license, the license is then executed and it is not competent for A. to revoke it and make B. a trespasser." The cases show clearly that, under the rulings of those states with which the decisions of the supreme court of Missouri are in accord, a license, such as was granted to plaintiff, cannot be revoked while still in force by the terms of an agreement implied, having been executed in part, and while all of the conditions on which it was granted are being observed. If this be true plaintiff, when arrested, was rightfully upon defendant's land and entitled to remain there. *Clement v. Durgin*, 5 Me. 9; *McKillip v. McIlhenny*, 4 Watts, 317; *Wilson v. Chalfant*, 15 Ohio, 248; *Beatty v. Gregory*, 17 Iowa, 114; *Snowden v. Wilas*, 19 Ind. 10; *Lacey v. Arnett*, 33 Pa. St. 169; *Huff v. McCauley*, 53 Pa. St. 209; *Addison v. Hack*, 2 Gill's R. 221; *Cook v. Prigden*, 45 Ga. 331; *Ameriscoggin B. Co. v. Bragg*, N. H. 202; *Rerick v. Kern*, 14 S. & R. 267, and 2 Am. L. Cases.

THOMPSON, J., delivered the opinion of the court.

In this case we adopt the appellant's statement as follows :

This was an action for damages. The petition upon which the case was tried states the causes of action as follows:

1. Plaintiff states that defendant is a corporation duly created and existing under the laws of the state of Missouri, and having its principal offices and place of business in the city of St. Louis in said state.

Plaintiff further states that on the second day of October, 1887, plaintiff being then lawfully upon the

grounds of the said defendant corporation, commonly known as the St. Louis Fair Grounds, situated in the said city of St. Louis, said defendant without any reasonable cause, and without any right or authority so to do, and against the will of plaintiff, caused plaintiff to be arrested by a police officer of the said city of St. Louis, and to be taken into custody by said officer and forced and compelled plaintiff, against his will as aforesaid, and in custody as aforesaid, to go to the office of the president of said corporation upon said grounds. That after being so taken to said office, plaintiff was by the direction of the officers and agents of defendant, without reasonable cause on the part of defendant, and against his will as aforesaid, by said officer ejected from said grounds. That by reason of the acts aforesaid plaintiff was wrongfully restrained of his liberty and imprisoned, and was thereby prevented from attending to his business and suffered great indignity, to his damage in the sum of one thousand dollars, for which with costs he asks judgment.

2.   Plaintiff for a second and further cause of action states that on the second day of October, 1887, defendant, through its agents and servants, wantonly cut, broke, mutilated and destroyed certain property belonging to plaintiff, of the aggregate value of seventy-five dollars, and then being on certain grounds of the said defendant commonly known as the St. Louis Fair Grounds in the said city of St. Louis and consisting of wooden tables, hammer, paper bags, sugar, lemons, cakes and soda water, whereby said property was rendered worthless to plaintiff, to his damage in the sum of seventy-five dollars, for which sum with costs plaintiff asks judgment.

The answer contained a general denial and also an affirmative defense, which for the purpose of this appeal it is unnecessary to set out in full.

Plaintiff testified in his own behalf. The material portions of his testimony are as follows :

That there was a public sale of booths in September, 1887, for the annual fair of that year; that he attended that sale ; that Mr. Green, president of the defendant, was present ; that a man in the crowd asked Mr. Green if the sale of privileges this year would be extended to the purchasers of booths as in years previous, and Mr. Green said that the same privileges would be extended ; that it had been customary for years previous to give booth-holders the privilege to occupy a plot of ground in front of their booths extending from the gutter which runs around the outer circle of the amphitheatre for a distance of sixteen feet outwardly to the nearest trees for the purpose of selling and serving refreshments, and that when Mr. Green used the words " outside privileges " it was understood to refer to the use of such a plot of ground ; that he, plaintiff, did not make a bid for any booth himself, but that after the public sale was over he went to a Mrs. Donahoe, the purchaser of booth No. 15, and that he " purchased this piece of ground measuring sixteen feet square."

Q. Well, state to the jury from whom you purchased it and what you paid for it ? A. I paid Mrs. Donahoe twenty dollars for it.

Q. Mr. Gibson, state what, if anything you obtained from Mrs. Donahoe after paying her the twenty dollars as you have stated ? A. What did I get from her ?

Q. Yes, sir. A. I got a receipt for my money with a ticket of admittance.

Q. Well, examine first the paper I hand you and state if you can identify it, if so, what it is ? A. That is her handwriting ; that is their signatures.

Q. Whose signatures ? A. Mrs. Donahoe and John Donahoe.

Q. Who was John Donahoe ? A. Mrs. Donahoe's husband.

Q. He was the lady's husband ? A. Yes, sir.

Q. Will you look at this and see if you can identify that? A. Book 160 is the number of it, St. Louis Fair.

Q. Don't read it; I ask you what it is? A. It is the book that Mrs. Donahoe gave me that she got from the Association.

Mr. Smith: If the court please, I offer this receipt in evidence. The receipt is: "St. Louis, Mo., September 24th, 1887. Sold for the sum of twenty dollars to F. B. Gibson the outside privilege of booth No. 15 of the St. Louis Fair for 1887 with one ticket of admittance. Received payment in full. Mrs. Donahoe, John Donahoe."

The book of tickets is endorsed on the outside, "St. Louis Fair Privilege ticket, account of booth 15. Rolla Wells, treasurer. No. 160."

I will read one of the tickets, "St. Louis Fair 1887. Good for this day only. Not good if detached by other than the T. K. T.—Ticket Collector." Then printed on the back—"A transfer of these tickets will cause a forfeiture of the same."

That after making these arrangements with Mrs. Donahoe, he proceeded to place some tables on the plot of ground opposite booth 15; also purchased supplies for the sale of lemonade, soda water and cakes; used the booth-tickets to gain admission to the grounds, and began business on the first day of the fair, whereupon the superintendent of the fair notified him that he could not be allowed to occupy the space where he had located; that it was against the rules to occupy that space, and that he must move away; that plaintiff expostulated with the superintendent; that the latter was definite and peremptory about it, but plaintiff still declined to move; that thereupon the superintendent went off and returned with a policeman, and notified plaintiff that President Green's orders were to arrest the plaintiff if he would not vacate the premises; that

plaintiff still declined to move; that, thereupon, a sergeant of police took plaintiff to President Green's office, in the fair grounds, and that Mr. Green requested the sergeant to put plaintiff out of the grounds, which was done; that plaintiff, thereupon, immediately purchased a ticket of admission and returned into the grounds in time to see his tables broken up and removed, and his cakes and other supplies thrown upon the ground, where they were spoiled by a rain-storm which happened shortly thereafter; that he had about forty dollars' worth of cakes, two dollars' worth of sugar, five dollars' worth of raspberry syrups, and about two dollars' worth of paper bags; also a hammer worth seventy-five cents, one dollar's worth of lemons, ninety cents' worth of canvas, and that the tables were worth $7.50, and that he lost all of these articles.

Plaintiff made no effort to remove his goods or to save them from injury, but allowed them to remain upon the ground. There was no evidence of violence in removing plaintiff from the grounds. Plaintiff was simply led away.

Charles Green, president of the defendant association, testified on its behalf: He denied that the sale of booths included a plot of ground outside of the amphitheater, as described by plaintiff, but stated that the association never permitted the ground upon which plaintiff had placed his tables to be thus occupied; that it was against the rules of the association, and would block the way to the booths and amphitheatre; that, by "outside privileges" was understood the right on the part of booth-holders, to pass refreshments to people outside of their booths when the booths themselves were crowded, and to sell from the outside of the counter as well as from the inside; that when he observed plaintiff and others occupying space around the outer circle of the amphitheater with tables, he notified all of them to move, including plaintiff, and that he gave them several

Gibson v. St. L. Agricultural & Mechanical Ass'n.

hours to do so ; that plaintiff refused to move, though repeatedly requested to do so by himself and the superintendent and a sergeant of police, and that, thereupon, he had him put out of the ground. Mr. Green further testified that they never permitted transfers to be made by booth-men, and had the words, "not transferable," specially printed on the booth-tickets ; that the fair grounds association itself had no dealings with plaintiff of any kind ; sold him nothing and granted no privileges to him ; that when plaintiff claimed to have paid Mrs. Donahoe twenty dollars for the privileges which he claimed, he went to see Mrs. Donahoe, and she said she would give plaintiff back his twenty dollars ; that if she had known the trouble it would cause she would not have done that. Mr. Green told her he would lock her own booth if she allowed any more persons in front there.

It does not appear from the testimony that the sale of booths was evidenced by any writing whatever delivered to the successful bidder. Entries were made in the defendant's account-books ; the one relating to this particular case was as follows : "No. 15 Mrs. Donahoe $175." The association also delivered to the successful bidder a book of admission tickets marked "not transferable," as above explained.

At the close of plaintiff's case the defendant offered an instruction as of non-suit, which the court refused to give.

At the close of the whole case the court gave the following instructions of its own motion :

"The court instructs you as follows : If you believe, from the evidence, that at the renting of the booths by the defendant for the fair of October, 1887, it was announced by the defendant's president, Mr. Green, in effect, that those who rented booths would be accorded the same privileges that had been accorded booth-renters in former years, and if you also believe, from

the evidence, that among the privileges accorded such renters in former years was that of using a certain space in front of each booth for purposes of the kind which the evidence shows the plaintiff was using the space in front of booth 15, at the time mentioned in his petition, and of sub-letting such right to others, and of transferring to the persons to whom such right was sublet the tickets of admission of the kind shown in evidence, which were issued to booth-renters, then you should find for the plaintiff on the first count or cause of action stated in the petition.

"If you believe, from the evidence, that at the renting of the booths by the defendant for the fair of October, 1887, it was announced by the defendant's president, Mr. Green, in effect, that those who rented booths would be accorded the same privileges that had been accorded booth-renters in former years ; and if you believe, from the evidence, that among the privileges accorded such renters in former years was that of using a certain space in front of each booth for purposes of the kind which the evidence shows the plaintiff was using the space in front of booth 15 at the time mentioned in his petition, and of sub letting such right to others ; and if you believe from the evidence that, while the plaintiff was in the exercise of such right under license from Mrs. Donahoe, the defendant, by its officers, agents or servants, wilfully injured or destroyed any of plaintiff's property, you should find for the plaintiff on his second count or cause of action stated in his petition.

"The court instructs the jury that if they find for plaintiff on the first cause of action set forth in his petition they will assess his damages at such a sum as will compensate plaintiff for loss of time and injury to his feelings which they may believe under the evidence he suffered in consequence of the arrest and imprisonment therein mentioned.

" If you find for the plaintiff on his second count or cause of action stated in his petition you will assess his damages at what you may find from the evidence to have been the fair and reasonable value of his property, which you believe from the evidence the defendant, by its officers, agents or servants, injured or destroyed.

" But on the other hand the court instructs you that the mere act of renting the booths conferred no such privileges as those mentioned in the preceding instructions, and if such privileges were conferred it was by virtue of an announcement by the defendant's president as above mentioned, and also of the according of such privileges in former years.

" Unless therefore you are satisfied from the evidence that at the renting of said booths for the fair of October, 1887, the defendant's president did announce in effect that those who rented booths would be accorded the same privileges that had been accorded booth-renters in former years ; and unless you are also satisfied from the evidence that among the privileges accorded such renters in former years was that of using a certain space in front of each booth for purposes of the kind which the evidence shows the plaintiff was using the space in front of booth 15 at the time mentioned in his petition, and of sub-letting such right to others and of transferring to persons to whom such right was sub-let the tickets of admission of the kind shown in evidence which were issued to booth-renters, then you should find that the plaintiff had no leave or license from the defendant within the meaning of the expression, ' leave or license from the defendant,' as used in the next instruction following.

" And, unless you are satisfied from the evidence that, at the renting of said booths for the fair of October, 1887, the defendant's president did announce in effect that those who rented booths would be accorded the same privileges that had been accorded booth-renters in

former years ; and unless you are also satisfied from the evidence that among the privileges accorded such renters in former years was that of using a certain space in front of each booth for purposes of the kind which the evidence shows the plaintiff was using the space in front of booth 15 at the time mentioned in his petition and of sub-letting such right to others, then you should find that the plaintiff had no leave or license from the defendant within the meaning of the expression 'leave or license from the defendant,' as used in the next two instructions following."

The court also gave the following instructions on behalf of defendant :

"If the jury find from the evidence that on the second day of October, 1887, plaintiff, without leave or license from the defendant, was engaged in selling goods, wares and merchandise upon the defendant's premises ; that he was requested to desist from carrying on said business upon defendant's premises, but refused to do so ; that thereupon defendant caused plaintiff's stand, goods, wares and merchandise to be removed from the premises without using any more force than was necessary for that purpose and without inflicting any greater damage to said property than was naturally incident to such removal, then the verdict should be for defendant on the second count of the petition.

"If the jury find from the evidence that, on the second day of October, 1887, plaintiff, without leave or license from the defendant, was engaged in selling goods, wares and merchandise upon the defendant's premises ; that he was requested to stop the same and to remove his stand and goods but refused to do so ; that thereupon defendant caused him and his goods to be removed from the premises without using any more force than was necessary for that. purpose and without inflicting any personal hurt or bodily injury, then the verdict should be for defendant on the first count of the petition.

" If the jury find from the evidence that, on the second day of October, 1887, plaintiff, without leave or license from the defendant, was obstructing a thoroughfare upon the defendant's premises by erecting and maintaining a stand thereon for the sale of goods, wares and merchandise ; that he was requested to remove the same but refused to do so ; that thereupon defendant caused plaintiff, together with his stand and goods, to be removed from the premises, using no more force for that purpose than was necessary, inflicting no bodily injury upon plaintiff, nor any damage to his property other than was unavoidably incident to such removal, then the verdict should be for the defendant on both counts of the petition."

The court refused the following instruction asked by defendant :

" The jury are instructed that the renting of booth 15 to Mrs. Donahoe did not authorize her to let or rent to this plaintiff a space of ground opposite to said booth and separated from it by a roadway, nor was she authorized thereby to license the erection of a stand for the sale of refreshments on the space occupied by plaintiff."

The jury found a verdict for the plaintiff on the first count in the sum of three hundred dollars and on the second count in the sum of $58.95. Defendant filed its motion for a new trial in the usual form, which was overruled, whereupon defendant appealed to this court.

The essential position of the appellant is that this action is brought on a wrong theory, and that there can be no recovery in this case because, on the plaintiff's own showing, he had, at best, a parol license to be on the defendant's premises ; and that a parol license is not an estate in land and may be revoked at any time by the owner of the fee. Upon this question the books disclose two opposing views. One is that the dominion which the owner of land possesses over it is of so high a

character that he may revoke a parol license granted to another to be on his land and expel him therefrom at any time, although he may have incurred expense or placed himself at a disadvantage in consequence of receiving the license. The other is, that where the recipient of a parol license expends labor or money by reason of, and in consideration of having received, the license, the licensor is estopped from revoking the same. The former view is supported by the English case of *Wood v. Leadbitter*, 13 Mees. & W. 838, and by considerable other authority, English and American. The question which view ought to prevail has been principally argued in view of English and American authorities outside of this state, and of the supposed policy of the common law in upholding the dominion of the owners of real property. We find, however, in the decisions of our supreme court sufficient material for deciding the question upon authority, without considering what has been decided in other jurisdictions.

In *Fuhr v. Dean*, 26 Mo. 116, the action was in the nature of trespass for expelling the plaintiff from a mine which, as he claimed, he was licensed to work under a general custom. The court found that the custom had not been proved and reversed a judgment for the plaintiff on that ground. The court also judged it necessary to lay down the principles on which the cause should be re-tried; and accordingly Judge RICHARDSON proceeded to state the law with regard to the revocation of parol licenses. While he cites with apparent approval the case of *Wood v. Leadbitter, supra*, yet what he states seems to be contrary to the doctrine of that case. He says : "If A. has given his consent, and before B. has entered upon his land, A. changes his mind, he has a right to do so and forbid B. from entering upon his land for the specified purpose. The license is thus far executory and may be revoked at pleasure.

If B. afterwards enters, he is a trespasser. If, however, B. enters before any revocation of the license, the license is then executed, and it is not competent for A. to revoke it and make B. a trespasser. This doctrine is applicable only to the temporary occupation of land, and confers no right nor interest in the land." This language Judge RICHARDSON quoted from the opinion of Chief Justice SAVAGE in *Mumford v. Whitney*, 15 Wend. (N. Y.) 380. Judge RICHARDSON then proceeded to draw the distinction between the right to the temporary occupation of land under a parol license, and the assumption of a right, untenable in law, of occupying another's land for an indefinite time under a license not created by deed. The case at bar raises no such question ; and if this were the latest discussion of the subject by our supreme court, we should be inclined to regard this as an authority in support of the plaintiff's view.

But in the next case where this question seems to have come before our supreme court ( *Desloge v. Pearce*, 38 Mo. 588 ), the facts were similar to the former case, except that the owner of the mine was suing in ejectment against a parol licensee, or against one who claimed the right to operate a mine which he had prospected and opened at great labor and expense,—basing his right upon a general custom relating to mining, as in the former case. The mine-owner recovered in the action of ejectment, and the judgment was affirmed. The subject of the revocation of parol licenses is considered by the court and the following language is found in the opinion, given by Judge HOLMES : "A parol license cannot be made the foundation of any right or interest in real estate, or to the future continuous possession thereof, nor to a continuation of the privilege beyond the will of the owner of the land. It is essentially countermandable and revocable at will." Further on, the learned judge says : "The privilege or license,

being in its own nature revocable at will, was revoked and terminated by the giving of the notice to remove." Although this was a case where the licensee claimed a license of indefinite duration, and in this respect differs from the case at bar, yet the reasoning of the court seems fully to support the view pressed upon us on behalf of the defendant in this case, and we should feel bound to rest our decision upon this case but for a subsequent decision of the same question by our supreme court.

In *Baker v. Railroad*, 57 Mo. 265, the question was gone over again under a state of facts something like this: A land-owner had granted to a railway company the privilege to construct its road across his land, by a deed which he had delivered to the agent of the company as an escrow merely. The condition of the delivery of the deed in escrow was that the company should comply with certain terms of the deed in regard to fencing, cattle-guards and farm-crossings, before the paper should take effect as a deed. The company entered upon the land and proceeded to construct their road without complying with these conditions, when the plaintiff brought ejectment to recover from them the strip which they had taken. The supreme court held that he could not recover, placing its decision upon the ground that the plaintiff had conferred upon the defendant a license which by its execution on their part had become coupled with an interest. Judge WAGNER said: "In the present case the defendant entered upon the land of the plaintiff with his consent and license, and made valuable, costly and permanent improvements. There was an agreement to relinquish the right of way on condition that the company should comply with the law in regard to fencing and making cattle-guards in a certain time after the road should be completed. This condition was not to be performed till after the road was finished and all the expenditures

made. It would now be an act of great injustice to allow plaintiff to use his legal title in the manner contemplated by this suit. He had the right to annex whatever condition he pleased upon his grant. He could have insisted upon the payment of damages before the company acquired any right to proceed with their work upon the land, or that they should have erected the fences in the first instance ; but when he gave them leave and license to do what they did, in consideration of their performing a subsequent condition, he cannot now bring ejectment and oust them from the possession. The interest was created by the licensor, and its enjoyment cannot be revoked in this way." In the course of the opinion several authorities are examined on the subject of the revocation of parol licenses, which go to show that a parol license cannot be revoked at pleasure after the licensee has entered upon the land under its authority and placed himself at a disadvantage by so doing. The case of *Fuhr v. Dean, supra,* is quoted to this effect, but the case of *Desloge v. Pearce, supra,* is not noticed. We conclude that we are bound by the authority of this case to hold that the view of the defendant in the case at bar is not well taken and our conclusion is strengthened by the decision of the Kansas City court of appeals in *House v. Montgomery,* 19 Mo. App. 170, where the subject is gone over at considerable length in an opinion by Judge ELLISON, and the conclusion reached that, in such a case, the general, though not universal, doctrine is, that the licensor is estopped from revoking the license. It is not necessary to decide what would be the rule if this were a case of a license for more than a temporary occupation.

No other substantial question seems to be presented for our consideration, and the judgment is accordingly affirmed. It is so ordered. PEERS, J., concurs; ROMBAUER, P. J., concurs in the result.