## The Fish-Wheel Case.

### Williams *v.* McCord and others.

*(Circuit Court, D. Oregon. March 26, 1884.)*

PATENT FOR "REVOLVING DIP-NET."

The patent issued to Thornton F. Williams on August 2, 1881, and numbered 245,251, for an "improvement in revolving dip-nets," declared void for want of both invention and novelty, the same having been invented and put into operation by Samuel Wilson at the Cascades of the Columbia in the spring of 1879, from which machine the said Williams, in the fall of that year and the spring of 1880, constructed his "revolving dip-net."

Suit for Infringement of Patent, and for an account and injunction.

*D. P. Kennedy* and *William B. Gilbert*, for plaintiff.

*H. B. Nicholas,* for defendant.

DEADY, J. This suit was commenced on January 12, 1883, and is brought against the defendants for an account, and to recover damages for the wrongful use, by them, of a certain "revolving dip-net," alleged to have been invented by the plaintiff, and for an injunction to restrain them from the further use thereof. The bill alleged that the plaintiff, being the first and original inventor of such dip-net, on November 4, 1880, applied for letters patent thereon, which were duly issued to him on August 2, 1881, and numbered 245,251; that the defendants, on March 1, 1882, without the consent of the plaintiff, constructed "a revolving dip-net on the south side of Bradford's island, in the Columbia river, * * * embracing the improvement and invention described in said letters patent," and maintained the same "in operation during the fishing season of 1882,"—that is, from April 1st to August 1st,—to the damage of the plaintiff, $100; and still continues to operate the same.

The defendants, answering the complaint, deny that the plaintiff is the original inventor of the net in question, and that the same was not in public use when the plaintiff applied for his letters patent, and allege that said dip-net was fully described in Harper's *Monthly Magazine* for May, 1880; that Samuel Wilson, of Dallas, Iowa, invented and put in operation, on the Columbia river, the dip-net described in the bill, in April, 1879, long before the alleged invention of the plaintiff, and that the plaintiff surreptitiously availed himself of said Wilson's idea and invention, and obtained a patent for the same while the latter was engaged in perfecting it; but that neither said Wilson nor the plaintiff were the first inventors of said dip-net, and that the same had been in use in other places, by other persons, for the purpose of catching fish, for many years before, specifying, among others, sundry places and persons on the Catawba and Pee Dee rivers, in North Carolina, where it had been in use, in some instances, for more than 50 years; that on January 4, 1882, the defendant McCord, being the first and original inventor of certain improvements in a fish wheel, made application for letters patent thereon, which, on May 16th of the same year, were duly issued to him and other defendants, as the assignees of said McCord, and numbered 251,960, for an invention entitled a "fish wheel;" that afterwards, in 1882, the defendants licensed the "Snail Wheel Fishing Company," a corporation duly formed under the laws of Oregon, the defendants being the officers and stockholders thereof, to conduct such a fish wheel on the south side of Bradford's island, and that said corporation did construct and operate such wheel at said place during the fishing season of 1882, which is the same machine referred to and mentioned in the bill as being an infringement on the plaintiff's dip-net.

It appears from the evidence that fish wheels or dipping wheels

have been used on various rivers in North Carolina for the purpose of taking shad and other fish that are in the habit of ascending the same, as alleged in the answer. The wheel consisted of an axle or shaft of four or five feet in length, resting horizontally upon two upright posts or forked timbers planted on either side of a sluice or chute in the river, into which were let three pairs of arms or bows from three to eight feet long, owing to the depth of the water, and equidistant from each other. These arms were made of tough wood, and bent forward at the outer end like a plow-handle, and covered with a netting of twine so as to constitute a "dipper," not unlike in appearance, according to the language of a witness, "the top of a falling top buggy." The wheel was turned down stream by the force of the current striking the back of the "dippers," one of which was always in the water, and into which the fish ascending the stream by that chute or sluice went, and were carried upwards and backwards over the shaft and lodged on an inclined trough made of slats placed between the inner ends of the arms, on which they slide down into a box or tank immediately outside of the in-shore post.

In the spring of 1879 and prior thereto, Samuel Wilson, a carpenter, who was living at the Cascades of the Columbia, on the Washington side, conceived the idea of taking fish by means of a wheel driven by the current, and actually constructed one and put it in operation there by April, 1879, but on account of the health of himself and family he returned to Iowa in May of that year, leaving his wheel in charge of James Parker, who took a few fish in it before the high water carried it away. Afterwards, on March 28, 1882, Wilson applied for a patent on his invention of "a new and improved fishing wheel," which was issued to him on September 12, 1882, and numbered 264,395. In the specification it is described as "a wheel constructed with nets embraced in four or more sections thereof, to each of which nets an opening is made from the periphery or near it, and from which there is an escape passage from the center of the wheel, and at one side, to a chute leading to a cage-net, all so arranged that the wheel, being located in a fish-way, to be rotated by the water flowing against it, or by another wheel attached to the shaft outside of the fish-way, the mouths of the passages into the nets of the wheel will open at the rear of the wheel to the fish ascending the stream, to be entered by them as they attempt to pass under the wheel, whereby, as that side of the wheel rises, the fish will be caught, carried up, and shunted out through the aforesaid side central passages into the chute, by which they will be delivered into the trap-cage, to be taken out at pleasure, as hereinafter more fully described." The size of the wheel might vary from 10 to 40 feet, owing to the depth of the water; and the one constructed was about 20 feet in diameter.

As early as the spring of 1877 the plaintiff lived at the Cascades of the Columbia, on the Oregon side, and was engaged in taking fish there with the ordinary gill and dip net, and has lived there ever

since. It is asserted in his testimony that he "conceived" the idea of this revolving dip-net in the fall of 1878; and that he commenced to construct it then, but did not get the lumber in time to finish it for the fishing season of 1879, and therefore abandoned it or gave it up till the fall of that year, when he went to work on it again, and got it into operation in time for the fishing season of 1880, and afterwards obtained a patent for the same, as alleged in the bill. In his specification the plaintiff describes his alleged invention as "a new and useful improvement in revolving dip-nets," and claims "as new" therein:

(1) "The box-nets, I, constructed with holes, M, at their inner ends, substantially as herein shown and described, whereby the first (?) [fish or nets] are discharged, as set forth; (2) the nets. I, secured to arms of shaft, E, leaving an opening at the front, except at the inner part, for the inlet of the fish, and at the rear an opening for their outlet, as shown and described; and (3) the combination, with a rotary wheel having nets, I, with discharge openings, M, near the hub, and having the inner part inclined towards said openings, of a receptacle, J., arranged as shown and described."

But the decided weight of the evidence is that, in the fall of 1878, the plaintiff was engaged in getting together the material and preparing the timbers for a fish "trap" at the Cascades, and not a wheel or net, which he never completed, and is now falsely claiming to be the *conception* or beginning of his "revolving dip-net;" and that in the fall of 1879 he availed himself of his knowledge of Wilson's invention, thinking, it may be, that he had abandoned it, and constructed the machine for which he afterwards obtained a patent.

In the May number of Harper's *Monthly* for 1880 there is a wood cut of the North Carolina wheel, (page 849,) illustrating an article, "The Shad and the Alewife." The Wilson wheel, either as patented by himself or the plaintiff, although in the main anticipated by the North Carolina wheel, was, so far as appears, constructed without any knowledge of the existence of the latter, and is an improvement upon it in some material particulars. But the plaintiff's wheel being a mere copy of Wilson's, with some immaterial changes in form and material, his patent is void, both for want of invention and novelty. Walk. Pat. §§ 23, 52. The wheel used and patented by the defendants is probably an improvement on Wilson's, particularly in the arrangement of the basket or nets, whereby the fish are discharged below the shaft, and are less liable to be injured. But as the patent to the plaintiff appears to be void for the reasons stated, it is not necessary to consider that question. But I cannot refrain from adding, on behalf of the public, that I think the best disposition that could be made of this controversy would be for the legislature to intervene in the interest of the fish in the future, and prohibit the use of these murderous machines anywhere in the waters of the state.

The bill is dismissed, with costs.