CRESCENT MINING COMPANY, RESPONDENT, v. SIL-
VER KING MINING COMPANY, APPELLANT.

14 57
c17 460

TEMPORARY INJUNCTION—CONFLICTING AND INDEFINITE ALLEGA-
TIONS AND PROOF—CONTINUING RESTRAINING ORDER
UNTIL HEARING.

1. Where the pleadings and affidavits on hearing for a tempo-
rary restraining order are such as to leave in doubt the quan-
tity of water appropriated by or belonging to each party, and
it does not appear with reasonable certainty that defendant
had not acquired or did not own the water and mines referred
to in the complaint, and no definite or certain amount of
water is alleged to belong to the plaintiff, and it also appears
that the allegations in the complaint and affidavit supporting
it are substantially denied, and it is alleged that license was
granted defendant to lay a pipe line over the land of plaintiff
to the water in question, which is denied, and when the re-
straining order leaves in uncertainty the amount of water
defendant was permitted to use, *held*, that the respective
rights of each party are so uncertain and indefinite that the
same cannot be safely determined from the conflicting affida-
vits and showing made.

2. When this state of facts exists, and it is apparent that the con-
tinuance of the restraining order until the hearing will work
great injury to one of the parties, without corresponding ben-
efit to the other, *held*, that the restraining order should not
continue, if adequate protection to the parties until the final
hearing can be had without it, by means of a bond of indem-
nity.

3. *Held*, also, that under the facts in this case a proper deter-
mination of the case can only be reached upon a trial, where
the witnesses can be heard and examined in a way to sift their
candor, recollection, and truthfulness.

STREET, District Judge, dissenting.

(No. 680. Decided Sept. 4, 1896.)

Appeal from the district court of the Third judicial circuit, Territory of Utah, Hon. W. H. King, *Judge.*

Action by the Crescent Mining Company against the Silver King Mining Company for trespass, and to require defendant to show cause why an injunction should not be granted pending the final hearing in the action, and to temporarily restrain defendant from the acts complained of, until the hearing upon the order to show cause.

From an order granting a temporary injunction, defendant appeals. *Reversed.*

*Dickson, Ellis & Ellis,* for appellant.

The opinion in the case of William B. Smith et al. v. Jonah Philips, 6 Utah 376, does not disclose just what the pleadings in that case contained, but we have a right to assume that they warranted the decree which was entered below, and reversed on appeal.

There the decree was—"That the defendant shall have the use of *one good irrigation stream of water* of said Dry Creek * * * to be measured out, distributed to him and his use thereof regulated by the water master."

The court held that this decree was absolutely fatally defective for uncertainty.

In this case the order appealed from is, that defendant —"Be enjoined and restrained from taking or diverting from the said Thayne's or Shadow Lake mentioned and described in the complaint herein, by its pipe line or otherwise, or from any of the visible sources of supply or tributaries of the said lake including the stream of water issuing from the Jeannette or Thayne's tunnel described in the complaint herein, any water or waters therein * * * *exept* that the said defendant *during the irrigating season of each year* is allowed and permitted to take from the waters of said Shadow Lake *an amount*

*of water equal to the .amount heretofore used by the grantors of said defendant, and reasonably necessary for irrigating certain lands formerly owned by one Sullivan and his grantors,* described in the proofs in this action."

Surely the same certainty is as necessary in an injunction order as in a judgment.

The allegation here is not that defendant is guilty of a continuing trespass, in the matter of digging a trench and laying a pipe therein, and there is not one single element of irreparable injury—no showing of waste or destruction.

If digging this trench is actionable, it is a mere naked trespass, to restrain which no injunction can be sustained. High on Injunctions, sec. 697-699 and cases there cited.

"The appropriate function of the writ of injunction is to afford preventive relief only, and not to correct injuries which have already been committed, or to restore parties to rights of which they have already been deprived.

"It is not, therefore, an appropriate remedy to procure relief for *past injuries*, and it is only to be used for the prevention of a future injury actually threatened, and to prevent the perpetration of a legal wrong for which no adequate remedy can be had in damages. And if the act sought to be enjoined has already been committed, equity will not interfere, since the granting of an injunction under such circumstances would be a useless act." High on Injunctions, 1st vol., sec. 23.

As to the matter of defendant acquiring an easement in plaintiff's land by these trenches and pipe line, that needs no discussion. An easement in land can only be acquired by consent or acquiescence, and the bringing of this suit is enough to stop the running of the statute or the acquiring of any right by prescription.

Where it appears that greater danger is likely to

result from granting than from withholding the relief, or where the inconvenience seems to be equally divided as between the parties, the injunction will be refused, and the parties left as they are, until the legal right can be determined at law.

This is especially true when the injuries which would result to defendant if the relief were improperly granted would greatly exceed the benefits which might result to plaintiff if the injunction were improperly granted.

High on Injunctions, section 13 and cases cited in note 1; *Swift* v. *Jenks et al.*, 19 Fed. R. 643.

In this case it is said: "Where an injunction will work great injury to one party without corresponding benefit to the other, it should not ordinarily issue, especially where adequate protection can be had without it." And see *McHenry* v. *Jewelt*, 90 N. Y. 62.

*Moyle, Zane & Costigan* and *Marshall & Royle*, for respondent.

An injunction always lies to prevent a threatened interference with water rights.

Among the many cases we cite 8 Cal. 78, 392; and in the Utah supreme court *Nephi Co.* v. *Jenkins*, 8 Utah 369; *Paragoonah Co.* v. *Edwards*, 9 Utah 477.

The right to an injunction to prevent the pipe line and the affecting of a permanent lodgment in our ground, the creation of an easement and a cloud upon our title, is also plain. *Richards* v. *Dower*, 64 Cal. 62; *Robertson* v. *Smith*, 7 Mining Rep. 196; High on Injunctions sec. 702; 3 Pomeroy Eq. Jurisp. sec. 1359.

This jurisdiction is well settled. *Moore* v. *Waterworks Co.*, 68 Cal. 146; *Mott* v. *Ewing*, 90 Cal. 231.

Such damage is always irreparable. *Richards* v. *Dower*, 64 Cal. 62; *Lighter Co.* v. *Simpson*, 77 Cal. 290; *Moore* v. *Massini*, 32 Cal. 595.

Besides, an injunction lies on account of the superior force and the lawlessness and violence. *Cœur D'Alene Co* v. *Miners' Union,* 51 Fed. Rep. 260; Ann Arbor R. R. cases, 54 Fed. Rep. 40, 746, 994.

The case of *Thorn* v. *Sweeney,* 12 Nev. 251, is wholly opposed to the current of authority, and is absolutely irreconcilable to the other cases quoted. The immortal Sweeney appears in many places in the Nevada Reports, now in water litigation, now in prison for contempt, but although apparently unsuccessful in his litigation he caused the Nevada court in this case to lay down some exceedingly poor law.

Here the legal right was admittedly clear. Our ownership was not disputed; the license claimed to have been given by McGregor, even if given, which the evidence shows is not true, was something which he had no authority to give, 4 Thompson on Corporations, section 4848; the property rights in the water and our appropriation are admitted; the claim of loss to the Silver King Company has already been shown to be absolutely without foundation.

The claim that they were going to condemn is shown to be disingenuous and untrue, because no such proceedings have ever been attempted. If attempted they would have been illegal, as our brief in the case of *McGregor* v. *Silver King* fully shows.

Finally, the claim is made that the injunctional order is indefinite. We call the court's attention to the fact that Sullivan's deed to the Silver King Company for agricultural water is dated long after the bringing of this suit, and is clearly a mere subterfuge for the defendant, or perhaps it had better be called *tabula* in *nuafragio.* But the order is not indefinite. The quantity of water necessary for Sullivan's land can be easily

ascertained, and our supreme court has so decided. *Holman* v. *Pleasant Grove,* 8 Utah 78:

MINER, J.:

This action was commenced July 18, 1895, in which the plaintiff prays that the defendant and its officers and agents be restrained from diverting or taking from Thayne's or Shadow lake, by its pipe line or otherwise, or from any of its visible sources of supply or tributaries of said lake, including the said stream issuing from the said Jeannette tunnel, any water or waters therein, or from taking any water from the said plaintiff's pipe line against its will, and from entering upon the Ætna, Hecla, Rebellion, Climax, Garfield, Senate, Walker, Extension. Spring, and Pinto mines, and from bringing any force of men upon said mining claims, and from using or attempting to use said pipe line upon said mining claims, and for an order to show cause, and for temporary injunction and judgment. Afterwards, on motion of defendant, and upon a hearing, the restraining order was set aside, upon defendant filing a bond, in the sum of $25,000, conditioned to pay all damages that might arise to the plaintiff for the acts complained of. And it was further ordered that the parties maintain the same status existing at the commencement of the suit. The bond ordered was given. The cause came on for hearing upon the order to show cause why the temporary restraining order should not be granted pending a final hearing, and the court granted the restraining order as prayed for, except that the order allowed the defendant, during the irrigating season, to take from the waters of Shadow lake an amount of water equal to the amount heretofore used by the grantors of the defendant, and reasonably necessary for irrigating certain lands formerly owned by Sullivan and his grantors, described in the proofs, and that in case

of an appeal from the order the defendant should give a supersedeas bond, in the sum of $25,000, suspending said injunction order during the pendency of the suit. From this order this appeal is taken.

Upon the hearing, numerous *ex parte* affidavits were filed, tending to sustain the allegations in the complaint and the denials and allegations in the answer. It also appears from the affidavit of one Thomas W. Ferry that prior to 1886 he and others owned the Thayne and Jeannette patented mining claims, and the Jeannette tunnel, which supplies the lake in question with water, as well as the unpatented claims known as the "Sunlight" and "Starlight," and that they continued to own the same and the water of Thayne lake until they conveyed the same to the defendant, in 1895, and that the Thayne and Jeannette tunnel was constructed by him long prior to 1886, and was located upon the Thayne patented mining claim, and that he then developed the stream of water in controversy, which ever since has afforded the principal supply and source of water to Thayne or Shadow lake; that he located the Starlight and Sunlight claims in 1881, and made a relocation of each of said claims subsequently, on the 10th day of January, 1883; that all of said mining and patented claims were located upon vacant, unpatented mineral lands of the United States, and that such locations were made and assessment work done in accordance with law; that the Thayne and Starlight lie together, and substantially embrace what is known as "Thayne Lake," and that through his permission and license the plaintiff was allowed to insert its pipe line into said lake for the purpose of supplying water to its mines; that the Pinto mining claim was located over the Starlight while it was a valid claim; that he constructed the Jeannette tunnel prior to 1886; and that he and his co-locators owned said claims and water until they sold

them to the defendant, in May, 1895. Many of the facts
stated in this and other affidavits are disputed by counter
affidavits. In fact, the complaint and the affidavits in
support of it, and the equities therein alleged, are, so far
as material, substantially met and denied by the answer
and the affidavits in support of it. The allegation in the
complaint that the defendant built its pipe line across
the plaintiff's mining claim without authority is met by
the answer, which alleges that permission was granted
by the superintendent of the plaintiff company to lay
said pipe line, and that the plaintiff afterwards tore said
pipe line up, whereupon said defendant replaced it, and
maintained it by guarding it. The complaint leaves in
doubt what quantity of water the plaintiff appropriated,
or what quantity it is entitled to use, as against the
defendant and other appropriators; and it does not
clearly appear from it that defendant had not acquired
and did not own the water referred to in the complaint,
as the water of prior appropriators, which plaintiff did
not appropriate, and no definite or certain quantity of
water from the lake is alleged to belong to the plaintiff.
Nor does it appear that any written notice of its appro-
priation of the water was ever posted or recorded.

The order appealed from, restraining the defendant
from taking water, "* * * except that the said
defendant, during the irrigating season of each year, is
allowed and permitted to take from the waters of said
Shadow lake an amount of water equal to the amount
heretofore used by the grantors of said defendant, and
reasonably necessary for irrigating certain lands, for-
merly owned by one Sullivan and his grantors, described
in the proofs in this action," is quite indefinite and uncer-
tain, when taken in connection with the uncertain alle-
gations in the complaint as to the quantity of water
appropriated by the plaintiff and other appropriators.

*Smith* v. *Phillips*, 6 Utah, 376. We do not consider it necessary at this time to review in detail the conflicting testimony presented by *ex parte* affidavits on this hearing; nor shall we undertake to lay down any rule of law governing the case, beyond the order we make. It is apparent that this court cannot, on the present showing, safely determine the rights of these parties, upon the pleadings and conflicting testimony presented. That determination can only be reached upon a trial, where the witnesses can be heard and examined in a way to sift their candor, recollections, and truthfulness. The main issue to be determined is whether the defendant or the plaintiff owns these mines, and has the right to use the water flowing from the Thayne and Jeanette tunnel into Thayne's or Shadow lake. From the pleadings and testimony, it is plain that the respective rights of these parties are uncertain and indefinite,—so much so that the right of neither party can safely be determined from the uncertain and conflicting testimony presented upon *ex parte* affidavits. When this is the case, and it appears, as it does in this case, that continuing the injunction until the hearing will work great injury to one of the parties, without corresponding benefit to the other, then the injunction should not continue, when adequate protection to the parties can be had without it. *McGregor* v. *Silver King Min. Co.*, 45 Pac. 1091; *Swift* v. *Jenks*, 19 Fed. 643.

Concerning the effect of the order now made, so far as it operates to allow the defendant's pipe line to lie undisturbed for a portion of its length through certain mining claims of the plaintiff, alleged to be unused for any purpose, and of no value, we may say further that, as appears now, under the pleadings, the defendant can have no legal right to occupy the plaintiff's property with its

14 Utah—5

pipe line, nor interfere with the plaintiff's right of dominion over it,—rocky, barren, vacant, though it may be,—unless its assertion of a license so to do is substantiated. If the license is proven, many authorities sustain the right claimed. *Campbell* v. *Railway Co.*, 110 Ind. 490; *Russell* v. *Hubbard*, 59 Ill. 335; *Williams* v. *Flood*, 63 Mich. 487; *Rhodes* v. *Otis*, 33 Ala. 578; *Rerick* v. *Kern*, 14 Serg. & R. 267; 13 Am. & Eng. Enc. Law, 551; *Railroad* v. *Mitchell*, 69 Ga. 114; *Railroad* v. *McLanahan*, 59 Pa. St. 23; *Wilson* v. *Chalfant*, 15 Ohio 248; *Clark* v. *Glidden*, 60 Vt. 702; *Gibson* v. *Association*, 33 Mo. App. 177–180; *House* v. *Montgomery*, 19 Mo. App. 170; *Baker* v. *Railroad Co.*, 57 Mo. 265; *Cook* v. *Pridgen*, 45 Ga. 331; *Stephens* v. *Benson*, 19 Ind. 367; Ang. Water Courses, § 318.

As this matter is of minor importance,—the injury caused by such occupancy, in any event, being merely nominal, and susceptible of full compensation in damages,—we think all questions concerning the acts alleged to constitute a license to the defendant, the authority of any particular officer of the plaintiff company to grant it, if it shall finally appear that any permission in fact was purported to be granted, and all contentions as to the legal effect of such acts, may well be remanded to the district court for fuller investigation; and we see no urgent reason for disturbing the condition of affairs as to this point, any more than any other. The *status quo* established by the court below has existed for 13 months, and an early trial on its merits is entirely practicable; and the order we shall make, in effect, leaves all interests in precisely the same condition as during that period, and as left by the court below, pending the appeal, in the order which granted the injunction, and at the same time prescribed the conditions upon which the appeal should be taken. Under these circumstances, we are of the opin-

ion, and therefore order, that the temporary order appealed from be, and the same is hereby set aside, upon the condition and when the defendant herein shall cause to be executed on its behalf, and filed with the clerk of the district court, a good and sufficient bond, in the penal sum of $25,000, to be approved by the clerk of the district court, conditioned that the defendant will pay all damages which the said plaintiff may sustain by, through, or from the laying or being of the pipe line or pipe lines through and across the lands of plaintiff, if it be finally determined that its construction was, or maintenance is, wrongful, and the diversion of the water through said pipe and pipe line, and all damages which the plaintiff may recover in this suit against the defendant for and upon account of the alleged trespass and diversion of the water of said Shadow lake, and other matters and wrongs alleged in the complaint, if the plaintiff's contention as to such matters, or any of them, is finally sustained. And it is further ordered that in the meantime, and pending the final hearing of this suit, or until the further order of the district court, or the judge thereof, the plaintiff and defendant herein observe and preserve the status of the properties described in the pleadings, so far as the pipe lines of the respective parties are involved, as it existed at the commencement of this suit, and that the costs of this proceeding shall abide the final result of the case.

RITCHIE, District Judge, concurs.

STREET, District Judge (dissenting):

I concur in the judgment upon the appeal, in so far as it vacates and sets aside the interlocutory injunction, but dissent from so much of the order made as preserves the status of the parties *pendente lite* respecting the following

mining claims, to wit: The Ætna, lot 196; the Hecla, lot
197; the Rebellion, lot 193, the Climax, lot 174; the Sen-
ate, lot 235; the James A. Garfield, lot 236; the Walker
and Walker Extension, lot 40. The order appealed from,
being analyzed, is seen to enjoin the defendant upon the
following distinct matters: First, defendant is enjoined
and restrained from taking or diverting from Thayne's
or Shadow lake, by its pipe line or otherwise, any water
or waters therein; second, defendant is further enjoined
from taking or diverting from any visible source of sup
ply or tributaries of said lake, including the stream of
water issuing from the Jeanette or Thayne's tunnel, any
water or waters; third, defendant is enjoined from tak-
ing any water from plaintiff's pipe line; fourth, defend-
ant is also enjoined from entering upon certain mining
claims, including those named above, and from using, or
attempting to use, upon said mining claims, its pipe line
described in the complaint. The slight modification of
the first section of the order contained therein is not rele-
vant to the subject under discussion. As to the two sub-
divisions first named, the parties set up absolutely con-
flicting claims of legal rights to both the land and water
in question; and I concur in reverting both plaintiff and
defendant to the final hearing, and denying relief *pen-
dente lite*. As to the third subdivision, no ground for any
relief, other than damages, is shown. This inquiry relates
to the preservation of the status of the parties as to the
mining claims above named, and covered by the fourth
subdivision of the injunctional order as herein outlined.
The title of the plaintiff to these claims, as against
defendant, is not disputed; but the defendant sets up as
a defense to the complaint of plaintiff an alleged license,
averred to have been originally granted by the general
manager of the plaintiff corporation. Some expenses
incurred in pursuance of the license, and user for some

months, constitute substantially the entire defense the defendant makes to justify it in maintaining its pipe line upon plaintiff's ground against its will and protest. It is not shown that the board of directors of the plaintiff corporation ever knew of the license, or in any way assented thereto; and the expenditure is not shown to have been so disproportionate to the use heretofore enjoined as to incline a court to apply the well-recognized principles of estoppel, by which a license not made irrevocable by some agreement of the parties will be held so as a matter of law, the estoppel being established by the evidence. The great weight of authority supports the view that such a license as is attempted to be set up by defendant, even though the act of the general manager be construed as the act of the corporation, is revocable; and, the license being admitted to having been revoked, the defendant's answer states no defense whatsoever as to the use of its pipe line in and from the mining claims in question, and no issue for trial can arise thereon. There is no question of fact to be determined. To raise an issue, the defendant must plead facts sufficient to constitute a defense, or form a cause of action for affirmative relief. *St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.*, 112 Ill. 384; *Jackson* v. *Railroad Co.*, 4 Del. Ch. 180.

Can it be held that under any circumstances the unauthorized and unratified act of a general manager of a corporation can vest in a licensee, content with such authority, an irrevocable license in corporate realty. The allegations and admissions of the pleadings make it clear that the plaintiff revoked the license, and the conclusion is irresistible that under such circumstances the defendant, in thereafter relaying its pipe line, and by compulsion continuing the use thereof, became a mere trespasser, and subject to an action in damages. Why, then,

preserve a status which substantially continues a trespass? High, Inj. § 700. In my opinion, the court, to be consistent, should relieve both plaintiff and defendant of any restriction whatsoever upon their respective remedies relating to the particular mining claims in question. Plaintiff, having been denied injunctive relief, should not be debarred from seeking his remedy in damages, even though repeated suits may be necessary. Why revert him to his remedy at law, and then forbid him taking any steps to secure it? As to the defendant, it sets up, as one of the grounds upon which the interlocutory injunction should be denied, that it intended to condemn a right of way for its pipe line through these claims. Should it not have an opportunity to proceed with such a course, if it so desires, and test to the court of last resort, if necessary, its right to acquire such right of way under the constitution of our state and the statutes in force respecting condemnation of land for use for such a purpose? This cannot be done in the pending action, and I dissent from the order tying the hands of the parties so they cannot seek their respective remedies in this matter until the case be decided. As to the mining claims heretofore named, and admitted to belong to plaintiff, no bond should be permitted. As to the other rights in dispute, if the defendant had not tendered its bond, *pendente lite,* to answer in damages to plaintiff if damages should be awarded it upon the trial of the cause, there would seem to be no foundation in law for requiring it. By the decision the parties are practically reverted to the trial of their respective titles to the ground occupied by the mining claim in dispute, and to the trial of their claims to the water connected therewith; and as injunctive restraint on either side, pending the final hearing, is denied, why should one party give its bond to answer in damages, rather than the other? But, the defendant having

offered to give its bond, I dissent only from the order requiring it, in so far as it is part of the proceedings to preserve the status of the parties respecting the undisputed property of plaintiff.