SAMUEL MOSIER *et al.*, APPELLANTS, *v.* EDWIN CALDWELL
*et al.*, RESPONDENTS.

USE OF WATER PERCOLATING INTO ONE'S OWN SOIL NOT ACTIONABLE. Where
plaintiffs appropriated, possessed and used a spring of running water upon land
which they occupied; and defendants dug a well upon adjoining land occupied
by them; and the spring dried up after the digging of the well, but there was
no visible connection between the well and the spring—the flow of water into
defendants' land being by percolation; *Held*, that plaintiffs had no cause of
action against defendants for damages or for an injunction.

RIGHT OF OWNER OF LAND TO DIG FOR WATER IN IT. A person may lawfully
dig a well upon his own land, though thereby he destroy the subterranean, un-
defined sources of his neighbor's spring.

PERCOLATING WATER A PART OF THE SOIL. Water percolating through the soil
is not, and cannot be, distinguished from the soil itself; and of such water, the
proprietor of the soil has the free and absolute use, so that he does not directly
invade that of his neighbor, or, consequently, injure his perceptible and clearly
defined rights.

APPEAL from the District Court of the Eighth Judicial District,
White Pine County.

Four different actions were commenced by the plaintiffs, Samuel
Mosier and M. Guptil, two at law and two in equity. In one ac-
tion, plaintiffs demanded damages in the sum of $100 against
James Wilson, and in another, damages in the sum of $385 against
Edwin Caldwell and Albert Caldwell, for diversion of water from
their spring, at Hamilton City, in May, 1869. The other two
actions were against the same defendants respectively, to restrain a
continuance of the alleged diversion. By consent of attorneys, the
decision in the Wilson case was to be the same as that in the Cald-
well case; and a non-suit having been granted in the latter, the
same judgment was entered in the former. Motions for new trial
having been denied, all the cases were carried up on appeal by the
plaintiffs in the same record.

*Harry I. Thornton,* for Appellants.

I. Could the defendants lawfully dig wells upon their own lands,
within a few feet of and above the spring of plaintiffs, and thereby
cut off from the spring its supply of water? They could not; be-

cause the supply of waters to the spring came through a well-defined subterranean gravel channel from the lands of defendants, and this channel was intersected by the wells of defendants. The spring was perennial, flowing out in a stream upon the surface. The defendants located their lands just above the land and spring of plaintiffs, subsequent to the possession and use of the land and spring by plaintiffs, and dug their wells close to and above the spring, knowing that they would tap it and take away its waters into their wells. The spring was not fed by percolating waters from any source, but by the water flowing through the gravel channel. See Washburn's Easements and Servitudes, Ch. III, Sec. 7; *Smith* v. *Adams*, 6 Page, 435; *Roath* v. *Driscoll*, 20 Conn. 533; *Chatfield* v. *Wilson*, 28 Vt. 49; S. C. 31 Vt. 358; *Wheatley* v. *Baugh*, 25 Penn. St. 528; *Acton* v. *Blundell*, 12 Mees. & W., 336; *Dexter* v. *The Providence Aqueduct Company*, 1 Story C. C. R. 387.

II. Our accepted doctrine is, that an ownership in water can be acquired by prior appropriation and use. The act of the 39th congress, entitled "An act granting the right of way to ditch and canal owners over the public lands, and for other purposes," Section 9, operated as a legislative grant of this spring to Mosier and Guptil. They held the land under a presumed grant from the proprietor. The grant of the spring would be annulled and worthless if subsequent locators were allowed to take up the adjacent land, and by digging wells in it, cut off the water granted to Mosier and Guptil. All the land being public, the defendants hold their lands under a presumed grant from the common proprietor, but the grant to them was subject to the prior grant to plaintiffs of the water flowing out of it into the spring. See *Irwins* v. *Phillips*, 5 Cal. 145; *Calvin* v. *Burnett*, 2 Hill, 620.

*D. W. Perley*, for Respondents.

I. The law is now as well settled both in England and in several of the United States, with regard to subterranean waters, as it is in California with regard to open running streams. See Washburn on Easements, Section 7; *Greenleaf* v. *Francis*, 18 Pick. 117; *Acton* v. *Blundell*, 7 Erch. 300; *Same* v. *Same*, 12 Mees. & Wel. 324;

*Cheesman* v. *Richards*, 2 Hurlst & N. 168; *Hammond* v. *Hall*, 10 Sim. 551; *Roath* v. *Driscoll*, 20 Conn. 533; *Chatfield* v. *Wilson*, 28 Vt. 49; *Harwood* v. *Benton*, 32 Vt. 724; *Ellis* v. *Duncan*, 21 Barb. 250; *Radcliffe* v. *Mayor*, 4 Comst. 195; *Wheatley* v. *Baugh*, 25 Penn. 528; *Whetstone* v. *Bawser*, 29 Penn. 59; *Parker* v. *Boston & Maine*, 3 Cush. 107; *Trustees of Delhi* v. *Youmans*, 50 Barb. 316.

II. The transcript shows that the waters flowing into the plaintiffs' spring were entirely subterranean, and were supplied by percolation; that above the spring there was no water-course or defined channel of any kind; that the defendants exercised only a lawful right to dig wells on their own land, and that, if any damage thereby resulted to the plaintiffs, it was *damnum absque injuria*.

*Harry I. Thornton*, for Appellants, on rehearing.

[After discussing the testimony, counsel contended that there was sufficient evidence to justify the jury in finding that plaintiffs' spring was supplied by two defined subterranean streams, which were cut off by the wells of defendants; that if the same rule of law applies to cutting off subterranean streams that applies to diverting surface streams from the proprietor below, the court below erred in granting the nonsuit; and that, in view of the facts, the question was, whether a person could lawfully dig a well upon his own land, whereby he would cut off the defined subterranean stream supplying his neighbor's spring.]

*D. W. Perley*, for Respondents, on rehearing.

The question is not whether there was a gravel bed leading or connecting the well with the spring; but whether that bed was under ground, invisible, subterranean, and its general course and direction wholly unknown; and whether the waters which flowed from one to the other (conceding, for the purposes of the argument, that they did so flow) were entirely subterranean. See also *Hanson* v. *McCue*, California Supreme Court, October Term, 1871.

By the Court, WHITMAN, J. :

Appellants brought actions against Edwin Caldwell and Albert Caldwell, codefendants, and James Wilson. As the facts were similar in both cases, the judgment in one was agreed as the judgment in the other, and the cases are brought here substantially as one. The actions were at law for damages for stopping the flow of water to appellants' spring; and in equity to restrain a continuance of the wrong.

The appellants proved the appropriation, possession and use of a spring of running water upon land occupied by them from May, 1868; the digging of wells by respondents upon land similarly occupied and possessed in May, 1869; the drying up of said spring after the digging of the wells; that no water appeared upon the surface of respondents' ground; that there was no visible connection between the wells and the spring — the flow of the water being by percolation. Upon this state of facts, respondents asked and obtained a nonsuit. From the judgment thereon, and from the order denying a new trial, this appeal is taken.

The question simply is: May one lawfully dig a well upon his own land, though thereby he destroy the subterranean, undefined sources of his neighbor's spring? That he may do so, is undoubtedly the settled law. The rule is thus given by Mr. Washburn: " It may be stated, as a general principle of nearly universal application, that while one proprietor of land may not stop or divert the waters of a stream flowing in a surface channel through it, so as to deprive a land owner, whose estate lies upon the stream below that of the proprietor first-mentioned, of the use of the same, or essentially impair or disturb the use thereof; if, without an intention to injure an adjacent owner, and while making use of his own land to any suitable and lawful purpose, he cuts off, diverts, or destroys the use of an underground spring, or current of water which has no known and defined course, but has been accustomed to penetrate and flow into the land of his neighbor, he is not thereby liable to any action for the diversion or stoppage of such water." Washburn's Easements and Servitudes, 441.

To elaborate the reasons for this rule, would be but to re-state

what has been often well defined in numerous decided cases; but the sum of all is, that such water is not, and cannot be, distinguished from the estate itself, and of that the proprietor has the free and absolute use, so that he does not directly invade that of his neighbor, or, consequently, injure his perceptible and clearly defined rights. For a full discussion of the subject, see Wash. 440, 448, and for a review of the authorities, *Trustees of the Village of Delhi* v. *Youmans*, 50 Barb. 316. The case at bar comes clearly within the general rule quoted. Therefore the judgment and order of the district court were correct.

They are affirmed.

---

A petition for rehearing having been granted, the following opinion was filed at the April Term, 1872.

By the Court, WHITMAN, J.:

A careful review of this case, upon rehearing, does not incline us to alter the original statement of facts; the conclusion therefrom is admitted to be correct. The evidence, as we read it, does not tend to show that there was any visible, open, running stream, in a well-defined channel, which had been interfered with. That the digging of respondents' wells cut off the underground springs and waters, percolating through the channel of a loose gravel stratum, is probably the fact; but such state of case is no stronger than the facts of *Acton* v. *Blundell*, 12 Exch. 324, or *Chasemore* v. *Richards*, H. L. Ca. 349, ruling cases in England, which are sustained by the weight of American authority. *Trustees, &c., of the Village of Delhi* v. *Youmans*, 50 Barb. 316.

The word percolate was used in the original opinion, as it seems to be used in the decided cases, perhaps not with strict correctness of definition, to designate any flowage of sub-surface water, other than that of a running stream, open, visible, clearly to be traced.

The judgment of the district court is affirmed.

GARBER, J., having been of counsel in the court below, did not participate in the foregoing decisions.