[No. 1,069.]

## B. B. STRAIT et al., Appellants, v. C. A. BROWN et al., Respondents.

Prior Appropriation of Water.—Prior appropriation gives the better right to running waters upon the public lands, to the extent of the appropriation.

Distinction between Running Water and Water Percolating through the Soil.—Percolating water existing in the earth is not governed by the same laws that pertain to running streams. No distinction exists between waters running under the surface in defined channels and those running in distinct channels upon the surface. The distinction is made between all waters running in distinct channels, whether upon the

surface or subterranean, and those oozing or percolating through the soil in varying quantities and uncertain directions.

IDEM — FACTS — LAW OF PERCOLATING WATERS NOT APPLICABLE. — The waters of "Warm Springs," at one time, flowed through a natural surface channel to Duckwater creek. The calcareous properties of the waters of the springs have formed a light, porous limestone by which the natural channel from the slough (near the springs) to the creek has been closed, and by some subterranean means, which are not satisfactorily established, the waters find their way to the creek. The springs are the source of the creek, and the diversion of the water from the springs, by the defendants, appreciably diminished the volume of water naturally flowing in the creek: *Held*, upon the facts, that the law of percolating waters was not applicable, and that the law of appropriation must govern the case.

IDEM — SUBTERRANEAN STREAMS. — Later appropriators can not lawfully acquire rights to the waters of the springs which constitute the source of the creek, simply because the means by which the waters are conveyed from the springs to the creek are subterranean and not well understood.

APPEAL from the District Court of the Fifth Judicial District, Nye County.

The facts sufficiently appear in the opinion.

*R. M. Clarke*, for Appellants:

I. The spring being the source of the stream, and being connected with it by subterranean channels, is in law part of it; and defendants have no more right to turn the water out of the springs than out of the stream itself. (Ang. on Waterc., sec. 112 a, b, c; *Wheatley* v. *Baugh*, 25 Pa. St. 528; *Arnold* v. *Foot*, 12 Wend. 330; *Smith* v. *Adams*, 6 Paige, 435; *Frazer* v. *Brown*, 12 Ohio St. 300; *Brown* v. *Illius*, 25 Conn. 583..)

II. The principle governing percolating waters has no application to this case. Defendants do not own the land where the spring is situated, and do not cut off its hidden percolating supplies by a proper use and enjoyment of soil which belongs to them. They can not invoke the maxim, *cujus est solum ejus est usque ad cœlum*. (Ang. on Waterc., secs. 109–112; *Dexter* v. *Providence Aq. Co.*, 1 Story, 387; *Balston* v. *Bensted*, 1 Campb. 463; *Dickinson* v. *Grand J. C. Co.*, 7 Exch. 282.) The waters are not percolating. The uncertainty which is the reason of the rule does not exist. The

spring is the ascertained and determined source of the stream.  (Ang. on Waterc., sec. 114 c; *Roth* v. *Driscoll*, 20 Conn. 533.)

*C. J. Lansing*, for Respondents:

I. The record fails to show that there is any defined, known, and existing surface or subsurface channel or watercourse through which the waters of "Warm Springs" usually flow into Duckwater creek.  No action lies for the diversion of any subterranean waters, or to determine correlative rights thereto.  If there be such diversion resulting in damages to the plaintiffs it is *damnum absque injuria.* The plaintiffs, in order to maintain this action against the defendants, must prove a natural, visible watercourse, or surface channel through which the waters of the Warm Springs usually flow into Duckwater creek.  (*Chasemore* v. *Richards*, 7 H. L. Cases, 349; *Acton* v. *Blundell*, 12 M. & W. 324; *Rawtrom* v. *Taylor*, 11 Exch. 369; *Broadbent* v. *Ramsbotham*, Id. 602; *Trustees* v. *Youmans*, 50 Barb. 316; 45 N. Y. 362; *Goodall* v. *Tuttle*, 29 Id. 459; 35 Id. 528; 8 Wisc. 369; High on Inj., secs. 509, 556; 9 Cush. 174; 11 Id. 195; 108 Mass. 219; 21 Barb. 230; 4 Coms. 195; Wash. on Eas., sec. 7; 18 Pick. 117; *Wheatley* v. *Baugh*, 25 Pa. St. 528; *Hanson* v. *McCue*, 42 Cal. 303; 27 Id. 476; 33 Id. 316; 18 Pick. 117; Ang. on Waterc., secs. 112, 114; *Brown* v. *Illius*, 25 Conn. 583; *Bassett* v. *Salisbury Mfg. Co.*, 43 N. H. 569.)

By the Court, BELKNAP, J.:

This is a suit in equity to establish the right of the plaintiff to the waters of Duckwater creek.  The sources of this creek are springs, known as the "Warm Springs," the waters of which, after running a short distance through a natural surface channel, are discharged into a large slough. This slough has no natural surface outlet.  Its westerly border consists of concretionary limestone, formed by the waters, and this formation extends to the defined surface channel of the creek, a distance of about half a mile.  The land thereby embraced is a portion of the unoccupied pub-

lic domain, and is unfitted for agricultural or other pur-
poses. Its surface gradually slopes from the lake to the
creek. The waters of the creek were appropriated by the
plaintiffs during the years 1867, 1868 and 1869 for the purpose
of irrigating their farming lands adjacent thereto, and ever
since then plaintiffs have used the waters for the purpose
of their appropriations, except when deprived thereof by
the acts of the defendants hereinafter stated.

In the year 1875, the defendants, in order to obtain water
for the purpose of irrigating their lands, which are so
situated that they can not be irrigated by waters from the
creek, diverted the waters of the Warm Springs for this
purpose. The principal object of this suit is to restrain
defendants from diverting these waters.

The court before whom the cause was tried, was assisted
in the determination of the questions of fact involved by a
jury, to whom certain interrogatories were submitted. The
court adopted the answers of the jury to the interrogato-
ries, and in connection therewith made further findings of
facts. Many of the interrogatories submitted to the jury,
as well as the findings made by the court, were addressed
to the question of the mode by which the waters of the
springs reach the creek. Upon this subject there is a con-
flict in the findings. For instance: The following interrog-
atory was submitted to the jury:

"Is there any subterranean stream or percolation of
water from Warm Springs to Duckwater creek?" To which
the jury responded, "No." Afterward they answered,
"Yes," to the following interrogatory: "Do the waters of
the Warm Springs connect with Duckwater creek and fur-
nish part of the waters usually flowing therein by subterra-
nean channels?" But throwing out of view the question of
conflict in the findings, and considering all of them together,
we think we are justified in assuming that at an indefinite
time the waters of the springs flowed through a natural
surface channel to the creek; that the calcareous properties
of the waters of the springs have formed a light, porous
limestone, by which the natural channel from the slough to
the creek has been closed, and that by some subterranean

means, which do not appear to have been satisfactorily established to court or jury, the waters of the springs find their way to the creek. There is no conflict with the finding that the springs are the source of the creek, and that the diversion by the defendants appreciably diminishes the volume of water naturally flowing in the creek. Upon these facts the district court rendered judgment in favor of defendants.

No question of riparian proprietorship arises in this case. Both parties claim by virtue of appropriations of the waters. The doctrine of appropriation of surface waters as established in the Pacific states is conceded by respondent. This doctrine declares that prior appropriation gives the better right to running water upon the public lands to the extent of the appropriations. If this law, as thus established, is applicable to the facts of this case, the judgment must be reversed.

Counsel for respondents contend that the judgment should be sustained, because there is no known or defined channel through which the waters of the springs reach the creek; that if these waters at all reach the creek, they do so by percolation or other unknown means, and that to such cases the law of watercourses does not apply.

It has been conclusively established by a long line of decisions that percolating water existing in the earth is not governed by the same laws that have been established for running streams. No distinction exists in the law between waters running under the surface in defined channels and those running in distinct channels upon the surface. The distinction is made between all waters running in distinct channels, whether upon the surface or subterranean, and those oozing or percolating through the soil in varying quantities and uncertain directions. The grounds for the distinctions are clearly pointed out in the authorities.

The subject was carefully considered in the case of *Chatfield* v. *Wilson*, 28 Vt. 54. The court there said: "The secret, changeable, and uncontrollable character of underground water, in its operations, is so diverse and uncertain that we can not well subject it to the regulations of law, nor build

upon it a system of rules, as is done in the case of surface streams. Their nature is defined, and their progress over the surface may be *seen* and *known*, and is *uniform*. They are not in the earth and a part of it, and no secret influences move them, but they assume a distinct character from that of the earth, and become subject to a certain law—the great law of gravitation.

There is, then, no difficulty in recognizing a right to the use of water flowing in a stream as private property, and regulating that use by settled principles of law.

We think the practical "uncertainties which must ever attend subterranean waters is reason enough why it should not be attempted to subject them to certain and fixed rules of law, and that it is better to leave them to be enjoyed absolutely by the owner of the land, as one of its natural advantages, and in the eye of the law a part of it, and we think we are warranted in this view by well-considered cases."

In *Haldeman* v. *Bruckhart*, 45 Pa. St. 519, upon this subject, the court said: "In case of an underground supply to a spring or well, or a stream emerging upon land of a lower proprietor, the water does not flow openly in the sight of the owner of the soil under which it passes, there is, therefore, no reason for implying consent or agreement between the proprietors of the adjoining lands beneath which underground currents exist, which is one of the foundations upon which the law as to surface streams is supposed to be built; and for the same reason no trace of positive law can be inferred. Again, if the lower proprietor has a right to the undisturbed flowage of water through subterranean passages in his neighbor's land, he has the power of preventing that neighbor from using the water on his own soil, for he can not use it and return it to its old passageway, which he may do in the case of a surface stream. Such a right, if it exists, also exposes the upper proprietor to the hazard of incurring fruitlessly heavy expenditures in efforts to improve or use his land, since he can have no knowledge until after his outlay is made, that his contemplated use will interfere with any rights or interests of an adjoining owner. A surface stream can not be diverted without knowledge that the

diversion will affect a lower proprietor. Not so with an unknown subterranean percolation or stream. One can hardly have rights upon another's land which are imperceptible, of which neither himself or that other can have any knowledge. No such right can be supposed to have been taken into consideration when either the upper or lower tract was purchased. The purchaser of lands on which there are unknown subsurface currents, must buy in ignorance of any obstacle to the full enjoyment of his purchase indefinitely downwards, and the purchaser of land upon which a spring rises, ignorant whence and how the water comes, can not bargain for any right to a secret flow of water in another's land. It would seem, therefore, most unreasonable that the latter should have a right to prevent his neighbor from enjoying his own land in the ordinary way, either by digging wells, cellars, drains, or by quarrying and mining."

Because of these reasons courts have treated percolating waters as part of the soil, and upon the principle that the owner has the land, even to the sky and to the lowest depths, have permitted him to dig as deep and build as high as he pleased.

Accordingly, in *Mosier* v. *Caldwell*, 7 Nev. 363, a case involving the rights of adjoining owners of land to water percolating through the soil, this court followed the general current of authority. In that case plaintiffs appropriated the waters of a spring upon their own lands. Afterwards the defendants, owning adjoining lands, dug a well thereon. The excavation caused the spring to dry up, but there was no visible connection between the spring and the well, the flow of water being by percolation. It was held that the damage done by defendants sinking their well was not the subject of legal redress.

We fail, however, to appreciate the force of the argument that undertakes to make the law of percolating waters applicable to the facts of the case under consideration. One of the defendants, it is true, is the owner of the land upon which the Warm Springs are situated, and it is also true, as a general principle, that the owner of land in its proper enjoyment may cut off or divert with impunity the water per-

colating through his soil; but the difficulty of defendants'
position is that they have not been sued for diverting per-
colating waters. It is not charged that in digging drains,
sinking wells, or working mines, or otherwise improving
their property, they have interfered with waters percolating
through the earth, as was the fact in the cases to which we
have been referred. On the contrary, they have gone to
the source of the creek and diverted living surface waters.

To these waters plaintiffs had acquired a prior right by
virtue of an earlier appropriation. But because in passing
from the springs to the creek the waters either percolate
through the earth or are conveyed by unknown subterranean
channels, it is urged that the law relating to percolating
waters should be applied.

It seems clear that none of the reasons upon which the
law of percolating water is based exist in this case. Here
there is no uncertainty, either as to the existence of the
water or the amount of water which defendants have taken
from plaintiffs. Nor is it reasonable to suppose that de-
fendants could have been ignorant of the effect which their
diversion of the waters would produce upon the plaintiffs
lower down the creek. It may fairly be assumed that plaint-
iffs acquired their lands from the fact that the waters of the
creek could be made available for irrigation; and, having
appropriated the waters prior to the appropriation made by
defendants, such prior appropriation should be protected.

It would be a mere pretense, of protection of the rights
acquired by the earlier appropriators of the waters of the
creek to say that later appropriators could lawfully acquire
rights to the springs which constitute the source of the
creek simply because the means by which the waters are
conveyed from springs to creek are subterranean and not
well understood. For these reasons we are of the opinion
that the judgment is against law and should be reversed.
As there may be a retrial of the case we consider it advisable
to add that under the facts established, plaintiffs were en-
titled in their pleadings and evidence to treat the waters of
the springs as a part of the creek. Judgment reversed.