## CRESCENT MINING CO., Appellant, *v.* SILVER KING MINING CO., Respondent.

1. *Appropriation of Percolating Waters—Ownership—Statute of Easement—Prescription.*

Percolating water from a mining claim, after passing into an underground artificial tunnel, dug for the purpose of developing a mine, and not naturally flowing from or in a natural stream, with well-defined channel, banks, and course, is not subject to appropriation by another while the water remains in the tunnel upon the owner's land; but if waters are allowed to flow into an artificial lake upon the public domain, they are subject to appropriation after they have left the tunnel upon the land of the owner. But such appropriator does not thereby acquire an easement in the mine or tunnel, or a prescriptive right to have the same flow from the tunnel into the lake uninterruptedly and continually, although he has continually used the water of the lake for seven years.

2. *Percolating Subterranean Streams.*

The ordinary rules of law applying to the appropriation of surface streams do not apply to percolating water and subterranean streams, with undefined and unknown courses and banks.

3. *Same.*

A person may lawfully dig a well on his own land, though thereby he destroys the subterranean, undefined, percolating water supplying his neighbor's spring.

4. *Percolating Waters—Prescriptive Rights Denied.*

Whenever percolating water is so hidden in the earth that its course is not discoverable from the surface, there can be no such thing as a prescriptive right in favor of an adjacent proprietor to have an uninterrupted flow of such water through his land.

5. *Section 2780, C. L. U. 1888 Construed.*

Section 2780, Comp. Laws Utah 1888, was intended to ayply to natural water courses, having a natural source of supply, and not to percolating waters arising on the land of the owner, collected and carried through artificial drains, constructed by the owner for the purpose of improving the property, or for the convenience of the owner.

6. *Statute of Limitations—Cause of Action did not Arise Until Defendant was Damaged.*

Plaintiff took the water after it left the tunnel, and passed into the lake upon the public domain. When the water had passed into the lake, defendant had lost control over it. The possession and user by plaintiff thereafter in no way interfered with defendant or his property, and defendant had no cause of action against the plaintiff therefor. The statute of limitations would not commence to run until a cause of action arose.

7. *Restraining a Trespass—Irreparable Injury—Remedy at Law—Easement.*

Defendant owned valuable mining property, and water to supply it a considerable distance therefrom. Plaintiff owned a strip of barren, rocky, worthless, uncultivated, unused land, on a barren mountain side, situated between defendant's mine and the water. Defendant dug a trench, and inserted a pipe line therein, under the surface of plaintiff's land, from its only water supply to its mine, but without removing the soil therefrom. It appearing that the laying of the pipe line caused plaintiff no damage whatever, except nominal; that to restrain the laying of the pipe line would cause defendant irreparable damage, and destroy a very large industry in the state, and work irreparable injury to the defendant, without any benefit to the plaintiff; that the property trespassed upon had no peculiar present or speculative value, and was not irreparably injured; that the injury, if any, could be compensated in damages by an action at law, and no equitable feature or incident to take the case out of the general rule appearing,—*held* that, under the circumstances of this case, the remedy at law being complete, the plaintiff would be required to resort to such remedy for the recovery of damages attending the alleged trespass. *Held*, further, that no easement could be acquired in plaintiff's land without his acquiesence in the alleged trespass.

McCARTY, District Judge, dissenting.

(Decided August 29, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Action by the Crescent Mining Company against the Silver King Mining Company. Judgment for defendant. Plaintiff appeals. *Affirmed.*

*Moyle, Zane & Costigan* and *Marshall, Royle & Hempstead,* for appellant:

This prescriptive period of seven years is fixed by law. But, we understand, it is contended on the other side that this statute, by the general principles of law, ought to be confined to natural water courses. But that is not the law. It has been expressly decided that prescriptive rights at common law can be acquired both in the artificially increased flow of a stream and in an artificial stream. *Smith* v. *Youmans,* (Wis.) 37 L. R. A. 285; *Belknap* v. *Trimble,* 3 Paige 577, 605; *Mathewson* v. *Hoffman,* 77 Mich. 421; *Delaney* v. *Boston,* 2 Harr. (Del.) 489; *Middleton* v. *Gregorie,* 2 Rich. L. 631.

Gould on Waters, sec. 225, recognizes this fact. So also Washburn Easements, *313, *315.

It will be seen that the injunction was asked on the ground of the maintenance of an occupation that would ripen into an easement, on the ground that the trespass was not fugitive or temporary, but continuous, and on the ground of a multiplicity of actions.

The title of plaintiff is undisputed, and the unlawfulness of defendant's entry and occupation is undisputed. No claim is now presented as was made upon the temporary injunction, that condemnation proceedings were pending, nor is any other defence presented of excuse or justification.

In *Richards* v. *Dower,* 64 Cal. 62, this identical question was presented. In that case the findings showed that a tunnel was run under plaintiff's ground, "but that said tunnel has not affected, and will not, if completed, affect,

injuriously or otherwise, the surface ground of plaintiff's said lot; that the driving of the tunnel was not, and will not, if completed, cause the plaintiff irreparable injury or injure said lot in any way, and that the defendant is not insolvent."

The lower court on that ground, as in our case, had refused the injunction. But the upper court say (see Report at p. 64): "The findings show that the tunnel, which the defendant is constructing through the plaintiff's land, is of a permanent character. It disturbs the plaintiff's possession and if permitted to continue, will ripen into an easement. This of itself is sufficient to entitle him to an injunction. (*Poirier* v. *Fetter*, 20 Kan. 47; *Johnson* v. *City of Rochester*, 13 Hun 285; *Williams* v. *N. Y. Cent. R. R. Co.*, 16 N. Y. 97.

The finding that the injury is not irreparable, is inconsistent with the findings which describe the character of the work which it is sought to have enjoined. The injury is irreparable in itself, and the solvency of the defendant is an immaterial circumstance. The findings leave no room for doubt as to the plaintiff's title to the premises, and that, coupled with the fact that the threatened injury is *per se* irreparable, entitles the plaintiff to the relief demanded in his complaint. And we think the error in dissolving the injunction should be corrected."

If the case just cited is good law, it decides the present case. Very rarely can a case be found so exactly "on all fours" with another case. It correctly states the law and has been repeatedly affirmed. A continuous trespass will always be enjoined. *Walker* v. *Emerson*, 89 Cal. 456; *Mott* v. *Ewing*, 90 Cal. 231; *Moore* v. *Waterworks Co.*, 68 Cal. 146; *Shepherd* v. *Manhattan Ry. Co.*, 117 N. Y. 442; *Kirkendall* v. *Hunt*, 4 Kan. 521; *Poirier* v. *Fether*, 20 Kan. 47; *Miller* v. *Lynch*, 149 Pa. St. 460; *Johnson* v. *Rochester*, 13

Hun 285; *Robertson* v. *Smith*, 7 Min. Rep. (Mont.) 196; *Valentine* v. *Schnebet*, 38 N. Y. Supp. 417; 3 Pomeroy Eq. Jur. sec. 1357.

The case of *Thorn* v. *Sweeney*, 12 Nev. 251, is contra, but it is so clearly against authority that it ought not to be followed.

*Dickson, Ellis & Ellis*. for respondent.

MINER, J.:

It appears from the findings of the lower court that the plaintiff in the year 1886 constructed a dam across the outlet of what is called "Thayne" or "Shadow" Lake, and by this means impounded and retained the waters flowing into said lake, and, by means of a pipe line inserted into said lake, took from the unappropriated waters thereof sufficient to fill its said pipe, and carried the same to the Crescent mine, for use in carrying on the mining operations of the plaintiff; that one of the principal sources of supply of said Shadow Lake or reservoir was the stream of water flowing from the Thayne or Jeanette tunnel, situated in and excavated upon the Thayne and Jeanette mining claims, the property of the defendant, and its grantors and predecessors in interest, which said stream of water was, at the date of the diversion by the plaintiff, as aforesaid, of the waters of said Shadow Lake, running from said tunnel into said lake; that said Thayne or Jeanette tunnel was run upon and excavated upon mining claims and mining property owned by said defendant, and its grantors and predecessors in interest, prior to the year 1883, and prior to the diversion and use of said waters of said lake, and its natural sources of supply, by said plaintiff, which said mining claims and mining property were duly patented by the United States to the grantors and predecessors in interest of defendant

prior to the running and excavation of said tunnel, and prior to the appropriation of any of the waters of said lake, and its natural sources of supply; that all the water issuing from said tunnel was developed by said defendant, and its grantors and predecessors in interest, by the running and excavation of said tunnel, and that said water was first encountered in said tunnel at about 700 feet from its mouth, and was and is percolating water, issuing from the rocks in said patented mining claims, and said water is not from any subterranean stream, having any defined course, bed, or banks, and that the waters of said tunnel were not open to appropriation by said plaintiff or other person, excepting said defendant, and were subject to the control and ownership of said defendant, and said tunnel was an artificial water course, and was not a natural source of supply of said lake. The court further found that the mining claims of plaintiff over and across which the pipe line of the defendant was laid unlawfully, and a trench dug in and upon said claims unlawfully, were and are barren, rocky, uncultivated, and unused mining claims, and are situated upon a barren, rocky, and worthless hillside, and that the digging of said trench and the laying of said pipe line did not damage said mining claim of plaintiff, or either of them, in any manner whatever, except nominally; that in the digging of said trench, and in the laying of said pipe line, said defendant did not remove any earth or material from said mining claims, and did not in any way disturb said mining claims except to dig said trench, and lay said pipe line therein, and then cover the same with the earth and material taken in digging said trench.

The first question for determination is, did the lower court err in its conclusions of law and decree rendered in this action, wherein it found and decreed that the respond-

ent was the owner, and entitled to the exclusive use and enjoyment, of all the water issuing and flowing out of the Jeanette or Thayne tunnel, mentioned and described in the complaint and findings, so long as said water is in said tunnel, and upon the mining claims of the defendant, and is entitled to divert said water of said tunnel to such uses as it may deem fit; provided such diversion be made upon the mining claims of defendant, and before the waters of said tunnel reach the said reservoir or lake known as "Shadow Lake," from which lake appellant appropriated and carried away said waters through its pipe line to its mine. The plaintiff contends that, under such a state of facts, the court should have decreed it the right to have the water percolating into and issuing from the Thayne or Jeanette tunnel, and wholly located upon the patented land of the defendant, flow uninterruptedly into Shadow Lake, located upon the land of the plaintiff, and that it was entitled to all of such waters by virtue of its alleged appropriation of the waters of said lake so formed; and that, because said plaintiff has used said waters of Shadow Lake for more than seven years, it has a prescriptive right to have the same flow from said tunnel uninterruptedly and continuously into said lake.

It is not contended that the plaintiff at any time entered upon the land of the defendant, or upon said tunnel, or appropriated the waters thereof, except after the waters had been allowed to flow into the so-called "Shadow Lake;" nor is it claimed that the plaintiff at any time interferred with defendant's possession or use of said water while it was still in the tunnel or in the mining claim of the defendant. Under such circumstances, could the plaintiff acquire, as against the defendant, any right in such water while it remained in the tunnel or in the mining claim of the defendant, from

which said waters percolated into said tunnel? The waters issuing from the artificial tunnel into the lake are found to be underground, percolating waters from the mining claim of the defendant, and not waters naturally flowing in a stream with a well-defined channel, banks, and course. Under such a state of facts, the law seems to be well settled that water percolating through the soil is not, and cannot be, distinguished from the soil itself. The owner of the soil is entitled to the waters percolating through it, and such water is not subject to appropriation. The ordinary rules of law applying to the appropriation of surface streams do not apply to percolating water and subterranean streams, with undefined and unknown courses and banks. When water percolates through and under the surface of the earth upon land belonging to one person, and comes to the surface just before it empties itself upon the land of another, the owner of such land has no right to demand that such percolation shall continue. It is held that a person may lawfully dig a well on his own land, though thereby he destroys the subterranean, undefined, percolating water of his neighbor's spring, and no action will lie therefor. *Mosier* v. *Caldwell*, 7 Nev. 363; *Roth* v. *Driscoll*, 20 Conn. 533.

In the case of *Acton* v. *Blundell*, 12 Mees. & W. 324, it is said: "In the case of the runing stream, the owner of the soil merely transmits the water over its surface. He receives as much from his higher neighbor as he sends down to his neighbor below. He is neither better nor worse. The level of the water remains the same. But if the man who sinks the well on his own land can acquire by that act an absolute and indefeasible right to the water that collects in it, he has the power of preventing his neighbor from making any use of the springs in his own soil which shall interfere with the enjoyment of the

well. He has the power, still further, of debarring the owner of the land in which the spring is first found, or through which it is transmitted, from draining his land for the proper cultivation of the soil; and thus, by an act which is voluntary on his part, and which may be entirely unsuspected by his neighbor, he may impose on such neighbor the necessity of bearing a heavy expense, if the latter has erected machinery, for the purposes of mining, and discovers, when too late, that the appropriation of the water has already been made." The court held that the case does not fall within the rule which obtains as to surface streams, nor is it to be governed by analogy therewith. *Greenleaf* v. *Francis*, 18 Pick. 117; *Bassett* v. *Manufacturing Co.*, 4 3N. H. 569; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Sweet* v. *Cretts*, 50 N. H. 439; *Broadbent* v. *Ramsbotham*, 11 Exch. 602; *Reg.* v. *Metropolitan Board of Works*, 3 Best & S. 716; *Canal Co.* v. *Shugar*, 6 Ch. App. 483; *Roath* v. *Driscoll*, 20 Conn. 533; *Wheatley* v. *Baugh*, 25 Pa. St. 528.

If the percolating waters which collected in the tunnel were open to appropriation, as claimed by the appellant, such appropriation would clothe him with full ownership of the waters of the lake, as well as the waters in the tunnel, and deprive the defendant of the right to use them for any purpose; and, although plaintiff had asserted no dominion over the percolating waters of the mining claim or tunnel, and had not interfered with the defendant's use thereof, he would still acquire an easement in defendant's mining claim to use the water thereof as he saw fit, notwithstanding the fact that defendant did not object to an appropriation of the water by him after it had left the tunnel of the mining claim. The result of such a contention would be that plaintiff would acquire a right to compel the defendant, who had de-

veloped and gathered the water into the tunnel for his own purposes, to suffer it to flow therefrom uninterruptedly into the lake forever; whereby plaintiff would acquire an easement and estate in the defendant's mining claim to the extent of the flow of the water, and thus destroy defendant's power to develop or use the mine for the pursuit of minerals, or any other useful purpose for which the water would be necessary. Such a rule, if established, would at once become adverse to the mining industry of the state. If, when digging a trench, a miner should strike a considerable quantity of water, and allow it to run down a canyon until he could be prepared to use it, a stranger should be allowed to appropriate and use it, and thereafter the owner be compelled to keep the water running from the tunnel for his use, the owner would soon be compelled to abandon his enterprise, and lose the benefits of his labor and the product of his land. It is evident that such a rule would be unjust as applied to percolating water; but, if well founded, and applied to a case like this, the estate of the defendant would be incumbered, and held subject to this easement of the plaintiff to have the water flow into the lake continually. Again, it does not appear that the plaintiff ever had the adverse use of the water in the tunnel, but took the water after it had left the tunnel and mining claim, and passed into the lake upon the public domain, and after defendant had lost control of the same. Such possession and user in no way interfered with the defendant or his property. It could not have maintained an action against the plaintiff for such taking and user after the water passed out of the tunnel into the lake, and no cause of action would have arisen for such user against the plaintiff. Having no cause of action against the plaintiff therefor, the statute of limitations would not commence to run until a cause of action should accrue.

In *Wheatley* v. *Baugh*, 25 Pa. St. 528, the court said: "Percolations spread in every direction through the earth, and it is impossible to avoid disturbing them without relinquishing the necessary enjoyment of the land. Accordingly, the law has never gone so far as to recognize in one man a right to convert another's farm to his own use for a filter. Such a claim, if sustained, would amount to a total abrogation of the right of property. * * * Even if this right were admitted to exist, the difficulty in ascertaining the fact of its violation, as well as the extent of it, would be insurmountable. But it seems to be thought that the enjoyment of the spring by the plaintiff below and those under whom he claims, for the period of twenty-one years, gives him a right to its continued existence, although the neighboring proprietor may thereby be deprived of the chief value of his own land. This depends upon the question whether the enjoyment of the spring was such as to have invaded his neighbor's rights, so as to enable the latter to maintain an action for the injury. No man can be barred by a statute of limitations for not bringing his action within the prescribed period, until it is first shown that he had a cause of action which he could have maintained." As between plaintiff and third persons, the plaintiff, being the first person to divert the water after it left the tunnel, would have the right to its use; and the defendant's grantors could not have maintained an action against the plaintiff to prevent it from using the water, after it had permitted the water to pass from its tunnel on its land, nor could the defendant maintain such action after it had acquired title thereto. This is the basis upon which it must be determined whether the plaintiff could acquire any right to this water by prescription. *Ellis* v. *Duncan*, 21 Barb. 230; *Chatfield* v. *Wilson*, 28 Vt. 49; *Railroad Co.* v. *Peterson*, 14 Ind. 112;

*Frazier* v. *Brown*, 12 Ohio St. 294; *Trustees* v. *Youmans,* 50 Barb. 316; Id. 45 N. Y. 362; *Sweet* v. *Creets*, 50 N. H. 439; *Mosier* v. *Caldwell*, 7 Nev. 363; *Chase* v. *Silverstone*, 62 Me. 175; *Taylor* v. *Fickas*, 64 Ind. 167; *Coleman* v. *Chadwick*, 80 Pa. St. 81; *Chesley* v. *King*, 74 Me. 164; *Bloodgood* v. *Ayers*, 108 N. Y. 400, 15 N. E. 433; Id. 37 Hun 356.

The rule is, that whenever the stream is so hidden in the earth that its course is not discoverable from the surface, there can be no such thing as a prescription in favor of an adjacent proprietor to have an uninterrupted flow of such stream through the land of his neighbor. *Haldeman* v. *Bruckhardt*, 45 Pa. St. 514; *Lybes' Appeal*, 106 Pa. St. 626; *Buffner* v. *Harris*, 5 R. I. 243

It is clear that, prior to the time when the tunnel was dug upon the mining claim of the defendant, the water was percolating water, flowing, seeping, or circulating in minute particles beneath the surface thereof, without banks or defined channels, and that its course was invisible and unknown. By the construction of this tunnel, this percolating water has become an artificial stream, and has never been diverted from the defendant's land, nor its waters taken away from the defendant or its grantors. Under such circumstances, when percolating waters have been gathered into tunnels or ditches, and allowed to flow from the proprietor's land to the inferior proprietor, and have been used by him a greater period of time than that allowed by the statute of limitations, it has been held that no title by prescription has been gained. Gould on Waters (page 402) lays down the rule that: "Where an artificial water course is made solely to get rid of a nuisance to mines, and to enable their proprietors to get the ores lying within the mineral field drained by it, the flow of the water through that channel is, from the nature of the case, of a temporary character,

having its continuance only while the convenience of the
mine owner requires it; and a user of the water by others
for twenty years, or a longer period, affords no presump-
tion of a grant of any right to the water in perpetuity."
*Wood* v. *Wood*, 3 Exch. 746; *Greatrex* v. *Hayward*, 8 Exch.
291; *Arkwright* v. *Gell*, 5 Mees. & W. 226; Gould, Waters,
§ 225; Ang. Wat. § 206; Wash. Easem. pp. 367–372;
*Hansen* v. *McCuem*, 42 Cal. 306; *Ditch Co.* v. *Crane*, 80 Cal.
181; *Railroad Co.* v. *Dufour*, 95 Cal. 615; *Pierre* v. *Fernald*,
26 Me. 436.

The case of *Sullivan* v. *Mining Co.*, 11 Utah, 438, relied
upon by the able counsel for the plaintiff, rests upon a
different state of facts from those disclosed in this case,
and is not in conflict with the principles here laid down.
In that case defendant's predecessors in interest dug a
well upon the public lands of the United States, and
used water therefrom, for domestic and other purposes,
for nearly 20 years.  Thereafter the plaintiff located a
mining claim, embracing the well within its boundaries,
and brought suit for trespass against the occupants of
the well.  The court held the grantors of the defendant
having located the well on the public domain prior to
the location of the plaintiff's mining claim, that, by virtue
of sections 2389, 2340, Rev. St. U. S., the plaintiff located
his mining claim subject to the rights of the defendant
and its grantors, and expressly recognized the principles
here laid down—that percolating waters belong to the
owner of the soil, and that the owner could dig a well
upon his own ground, and thereby dry up the well, sup-
plied by percolating waters of his adjacent neighbor with-
out liability.

We conclude that section 2780, Comp. Laws Utah, 1888,
was intended to apply to natural water courses having a
natural source of supply, and that it does not apply to

percolating waters arising in the land of the owner, and carried through artificial drains, constructed by the owner, for the purpose of improving the property, or for the convenience of the owner. So long as such water remained in the tunnel, or on said mining claim of the defendant, it was not open to appropriation by the plaintiff, or any other person, except the defendant and his grantors, and was the property of said defendant, and subject to its ownership and control.

The second question for consideration is, did the court err in its conclusions of law and decree rendered in this action, wherein it found and decreed that the plaintiff was not entitled to an injunction against the defendant for the digging of the trench and laying and maintaining the pipe line across the barren, rocky, and worthless mining claims of the plaintiff, mentioned in the complaint and findings herein, but is remitted to its action at law for said acts and damages therefor? In this case the court found that the defendant did not remove the earth, rock or soil of the plaintiff's mining claim, but simply dug a trench, and laid a pipe line therein, and covered it with the material taken out in digging the trench, and that neither the soil nor anything else was removed from the mining claim, and that said mining claim across which the trench was dug was barren, rocky, worthless, uncultivated, not used or worked, and that the pipe line and the digging of the trench did not injure said claim in any manner whatever, and that plaintiff suffered no injury, and was not damaged in any manner, except nominally, for such trespass, and that plaintiff had an adequate remedy at law for the alleged injury. Defendant owned water necessary to run his plant, located several miles away, between which water and its mine the plaintiff owned a strip of barren, rocky, worthless, uncultivated,

unused land, on a barren hillside, over which, as claimed, it refused to sell a right of way, or permit the defendant to run its pipe line to its mine. It does not appear that there was any other way of reaching the mine with the water, or that any water was obtainable. Without the water, one of the largest mining industries in the state, employing hundreds of laborers, and producing hundreds of thousands of dollars' worth of mineral annually, must be closed down and cease operation. The laying of the pipe line across this barren, valueless land caused no appreciable injury to the plaintiff. The court found the damages to be nominal. No easement could be acquired by the defendant in the land without the consent of the the plaintiff. To restrain the laying of the pipe line would cause defendant irreparable damage, and destroy and lay waste a mining industry of incalculable value, throw out of employment hundreds of laborers, and seriously retard and injure the people of the community and state in which the mine is located. To grant the injunction asked for would work a great and irreparable injury to the defendant, without corresponding or any benefit to the plaintiff; while to refuse it would injure neither, but leave the plaintiff to its remedy at law, where it could obtain such redress as the law should award it. Under such circumstances, the remedy at law being complete, the plaintiff should be required to resort to such remedy. The construction of this pipe line across the barren waste, under the circumstances shown in this case, was not an irreparable injury. If it was an injury at all, it was but nominal. If an injury was done to the land by laying the pipe line, the plaintiff had a complete remedy at law for the injury, and it appears the defendant is amply responsible to answer for the damages. No peculiar, present, speculative, or other

value is attached to the land crossed by the line. Few, if any, cases can be found where a court of equity has interfered by injunction to restrain a naked trespass, as such, without a showing that the property itself had some peculiar value, and could not admit of due recompense, or would be destroyed or irreparably injured by repeated or continued acts of trespass. In section 697, High Inj., it is said that the foundation of the jurisdiction of courts of equity to grant injunctions rests in the probability of irreparable injury, the inadequacy of pecuniary compensation, and the prevention of a multiplicity of suits; and, when facts are not shown to bring the case within these conditions, the relief will be refused. Equity will not, therefore, enjoin a mere trespass to realty, as such, in the absence of any element of irreparable injury. If, therefore, the plaintiff can recover for the trespass compensation equivalent or adequate to the injury which it has sustained, such injury, in no sense of the word, can be considered irreparable.

All the adjudged cases fix the rule to be that the injury must be of that peculiar nature that it cannot be adequately compensated in damages or allowed for in money. There must be some just, equitable feature or incident to take the case out of the rule, or equity will not interfere. When the facts present no matter requiring equitable relief, and the granting of the injunction will work a wrong and irreparable injury to one party, with no appreciable benefit to the other, and the remedy at law is adequate to do full justice, the court should reject such jurisdiction as not within its legitimate province. To hold otherwise would confound all principles upon which equitable jurisdiction stands. This court has already passed upon this same question in the case of *McGregor* v. *Mining Co.*, 14 Utah, 47, and in *Cres-*

*cent Min. Co.* v. *Silver King Min. Co.,* 14 Utah, 57, adversely to the plaintiff. This cause grew out of the same acts of alleged trespass, and were parts of the same transaction, with reference to the laying of the pipe line. In the case of *McGregor* v. *Mining Co.,* this court held that, under the circumstances disclosed, there was no just cause to invoke the equitable interference of a court of equity to prevent a trespass consisting of laying a pipe line across the barren, rocky, uncultivated, worthless land of the plaintiff, without doing more; and that in such case the plaintiff would be remitted to his action at law for damages. In that case, quoting from *Bassett* v. *Manufacturing Co.,* 47 N. H. 437, adopted and approved in *Thorn* v. *Sweeney,* 12 Nev. 251, the court held: "The power to grant injunctions to prevent injustice has always been regarded as peculiar and extraordinary. It is not controlled by ordinary and technical rules, but the application for its exercise is addressed to the conscience and sound discretion of the court. Ordinarily, it will not be exercised when the right of the complainant is doubtful, and has not been settled at law; and, even when it has been so settled, an injunction will not be granted when the remedy at law is adequate. It is not enough that an injury merely nominal or theoretical is apprehended, even although an action at law might be maintained for it; but to justify the interposition of this summary power, there must be cause to fear substantial and serious damage, for which courts of law could furnish no adequate remedy. When injuries shall be regarded as irreparable at law must depend upon the circumstances of the particular case. If the injury be trivial, as by * * * raising the water of the river a few inches upon its rocky shore, doing him no appreciable or serious damage, equity would not ordinarily interfere by injunc-

tion, even in cases where the right has been established at law; for the power is extraordinary in its character, and is to be exercised in general, only in cases of necessity, and when the court can see that other remedies are inadequate to do justice between the parties, and even then it is to be exercised with great care and discretion. If the granting of an injunction would necessarily cause great loss to the defendant,—a loss altogether disproportionate to the injuries sustained by the plaintiff,—that fact should be considered in determining whether the application should be granted; and in some cases it would justly have great weight. It has often been supposed that, when the right has been established at law, the plaintiff would be entitled to an injunction as a matter of course; and this misapprehension has arisen, probably, from the fact that, in a large number of cases,·injunctions have been refused upon the express ground that the title of the plaintiff had not been established at law, leaving room for inference that if it had been so established the injunction would have been issued. This, however, is clearly not the doctrine of courts of equity, for they will not ordinarily exercise this summary and extraordinary power, when substantial justice can be done by courts of law." The doctrine here announced is fully supported by *Bigelow* v. *Bridge Co.;* 14 Conn. 565; *Wason* v. *Sanborn,* 45 N H. 170; *Blake* v. *City of Brooklyn,* 26 Barb. 301; *Murray* v. *Knapp,* 42 How. Prac. 462, 62 Barb. 566; *Nicodemus* v. *Nicodemus,* 41 Md. 537; *Weigel* v. *Walsh,* 45 Mo. 560; *Bechtel* v. *Carslake,* 11 N. J. Eq. 244; *Catching* v. *Terrell,* 10 Ga. 578; *Wooding* v. *Malone,* 30 Ga. 980; 1 High Inj. §§ 483, 697–699–701; Eden Inj. 231; 2 Story Eq. Jur. 925, 928; *Thorn* v. *Sweeney,* 12 Nev. 251.

The case of *Uline* v. *Railroad Co.*, 101 N. Y. 98, relied upon by appellant, arose where a private owner of lots

on a public street sought to recover damages against a railroad company for raising the grade of the street and sidewalks, and so shaping the streets and gutters as to pour water therefrom upon the lots into the premises and basement of plaintiff's house, thereby flooding the lots and basement, so as to render them uninhabitable, and depriving plaintiff of the rental value thereof, to his great and irreparable injury. The case of *Papppenheim* v. *Railroad Co.*, 128 N. Y. 436, was brought to restrain the defendant from operating an elevated railroad in front of plaintiff's premises in the city of New York, and to· recover damages therefor. The case of *Wheelock* v. *Noonan*, 108 N. Y. 178, was brought to compel defendant to remove from six lots belonging to plaintiff stone and heavy boulders which defendant had placed upon the surface thereof, from 14 to 18 feet in height, causing plaintiff great and irreparable damage and injury, and destroying the rental value and use of the premises. These and other cases cited, present a state of facts entirely different from those shown in this case. It is plain that the object of the defendant was not to destroy or injure the plaintiff's property that could not readily be compensated in damages. Its acts were not to destroy or injure the plaintiff's property, but to preserve its own from destruction, without injury, except nominal, to the plaintiff; and it is claimed that any damages arising therefrom were offered to be paid.

The case of *Richards* v. *Dower*, 64 Cal. 62, relied upon by plaintiff's counsel, materially differs from the present ·case, in that the defendant in that case was excavating for a tunnel, and was removing the soil from the premises, and carrying it away, to the injury of the inheritance. Under such circumstances, the injunction was properly granted.

We find no error in the record.. The findings and judgment of the trial court are correct. The judgment of the district court is affirmed, with costs.

HART, District Judge, concurs.

McCARTY, District Judge, dissenting.

I concur in the judgment in so far as it affirms that part of the decree and judgment of the trial court awarding defendant the water in dispute that issues from the Jeanette and Thayne tunnel, situate and being on defendant's mining claim, but dissent from that part of the decision holding that plaintiff is not entitled to equitable relief restraining defendant from maintaining its pipe line across and through plaintiff's mining claims. The trial court found that plaintiff is the owner, in possession, and entitled to the possession, of the mining property across and through which defendant's pipe line is maintained, and was such owner, in possession, and entitled to the possession, of the same at the time said pipe line was constructed, and that defendant's entry and occupation of the property was and is unlawful. In addition to the facts found by the court, the complaint alleges, and the answer admits, the defendant employed a force of armed men, who, against the will and protest of plaintiff, patroled the pipe line where the same is maintained across and through plaintiff's premises, in order to protect defendant in the commission of the trespass complained of; and it is apparent, as shown by the record, that defendant intends, and, unless plaintiff is awarded injunctive relief, will continue to maintain its pipe line across and through plaintiff's premises, and make use of whatever force it may deem necessary to accomplish its purpose. Under this condition and state of affairs, it is

evident that an action at law would not afford plaintiff a complete and adequate remedy for the wrongs complained of. While the plaintiff in an action at law would be entitled to recover for damages done its realty by the trespass of defendant prior and up to the time of filing its complaint, yet a judgment for damages only would be no protection to plaintiff against defendant continuing the trespass. *Uline* v. *Railroad Co.*, 101 N. Y. 98; *Pappenheim* v. *Railroad Co.*, 128 N. Y. 436.

To deny the plaintiff equitable relief would force it to bring a succession and perhaps an indefinite number of suits against the defendant, or abandon that part of its mining property now occupied by the defendant. As shown by the record in this case, the plaintiff, in each action so brought, would be entitled to recover nominal damages only; therefore it would be compelled, if remitted to its legal remedy, to pursue a course of expensive, vexatious, and interminable litigation, or submit to what, in effect, would be a confiscation of its property by defendant. In the case of *Wheelock* v. *Noonan*, 108 N. Y. 178, an action brought by plaintiff to compel defendant to remove from certain lots belonging to plaintiff a quantity of rock or boulders placed thereon by defendant, Finch, J., speaking for the court, says: "But it is further said that he (referring to plaintiff) could sue at law for trespass. That is undoubtedly true. The case of *Uline* v. *Railroad Co.*, 101 N. Y. 98, demonstrates, upon abundant authority, that in such action only damages could be recovered, and for the subsequent continuance of the trespass, new actions, following on in succession, would have to be maintained. But in a case like the present, would that be an adequate remedy? In such action the damages could not easily be anything more than rental value of the lot. It is difficult to see what other

damages could be allowed; not because they would not exist, but because they would be quite uncertain in amount and possibly somewhat speculative in their character. The defendant, therefore, might pay these damages, and continue his occupation, and, if there were no other adequate remedy, defiantly continue such occupation, and, in spite of his wrong, make of himself, in effect, a tenant who could not be dispossessed. The wrong in every such case is a continued unlawful occupation, and any remedy which does not or may not end it is not adequate to redress the injury or restore the injured party to his rights."

The right to injunctive relief in cases of trespass, when the plaintiff's title, possession, and right of possession of the property are admitted or established, does not depend on the amount and the extent of the damage done or suffered in each particular case, but depends more upon the nature and character of the trespass. This doctrine is invoked and followed in the case of *Richards* v. *Dower*, 64 Cal. 62, which was an action for an injunction against the construction of a tunnel through plaintiff's lot, and 20 feet below the surface thereof. The court found: "That said tunnel has not affected, and will not, if completed, affect, injuriously or otherwise, the surface ground of plaintiff's said lot; that the driving of the tunnel was not, and will not, if completed, cause the plaintiff irreparable injury, or injure said lot in any way, and that the defendant is not insolvent." The court dissolved the preliminary injunction, and ordered judgment for the defendant. On appeal the supreme court said: "The findings show that the tunnel which the defendant is constructing through the plaintiff's land is of a permanent character. It disturbs the plaintiff's possession,

17 UTAH—30

and, if permitted to continue, will ripen into an easement. This, of itself, is sufficient to entitle him to an injunction. *Poirier* v. *Fetter*, 20 Kan. 47; *Johnson* v. *City of Rochester*, 13 Hun 285; *Williams* v. *Railroad Co.*, 16 N. Y. 97. The finding that the injury is not irreparable is inconsistent with the findings which describe the character of the work which it is sought to have enjoined. The injury is irreparable in itself, and the solvency of the defendant is an immaterial circumstance. The findings leave no room for doubt as to plaintiff's title to the premises, and that, coupled with the fact that the threatened injury is per se irreparable, entitles the plaintiff to the relief demanded in his complaint, and we think the error in dissolving the injunction should be corrected."

I am unable to draw the distinction between that case and the case at bar that the majority of this court have drawn. The gravamen in that case was the removal by the defendant of a part of the inheritance, and in this case it is the continuous, permanent, unlawful and forcible occupation of the inheritance by the defendant, which occupation deprives plaintiff of its property as effectually as though defendant had excavated and carted it away. The results and consequences of the trespass in both instances are the same.

The contention that plaintiff should be left to its remedy at law, because that portion of its mining claim over and across which defendant has laid and now maintains its pipe line is barren, rocky, and of no appreciable value, and the damage done the property only nominal, in my opinion ought not to prevail. The plaintiff's right to protection in the quiet, uninterrupted, and peaceable possession of those mining claims, barren, rocky, and apparently worthless though they may be in the estimation of the court, is just as sacred in the eyes of the law as

though they were of great value; and it is plain, as shown
by the record, that this right cannot be enforced, and the
plaintiff protected in the exercise thereof, by an action
at law. The remedy is therefore insufficient, imprac-
ticable, and inadequate. In my opinion the plaintiff has
a right to invoke the remedy that can give complete relief,
by compensating it for damages already done the realty,
and protecting it against the trespass being continued or
repeated, and thereby settle in one action what otherwise
would necessitate the bringing of a multiplicity of suits,
and I think the great weight of authority holds that
when a trespass is continuous, and not temporary or fugi-
tive, and complete relief cannot be maintained in a single
action at law, equity will lend its aid, and settle in one
action what otherwise would necessitate the bringing of
a multiplicity of suits. "An injunction lies to prevent
threatened trespasses, though the damage be susceptible
of compensation, where otherwise there is a probability
of the wrong being often repeated, and plaintiff thereby
be involved in a multiplicity of suits." 1 Spell. Extr.
Relief, §14. In 3 Pom. Eq. Jur. §1357, the learned
author says: "If the trespass is continuous in its nature,
if repeated acts of wrong are done or threatened, al-
though each of these acts, taken by itself, may not be
destructive, and the legal remedy may therefore be ade-
quate for each single act if it stood alone, and also the en-
tire wrong may be prevented or stopped by injunction,
on the ground of avoiding a repetition of similar actions,
* * * the ultimate criterion is the inadequacy of the
legal remedy. * * * It is certain that many tres-
passes are now enjoined, which, if committed, would fall
far short of destroying the property, or of rendering its
restoration to its original condition impossible. The in-
junction is granted, not merely because the injury is es-

sentially destructive, but because, being continuous or repeated, the full compensation for the entire wrong cannot be obtained in one action at law for damages." This doctrine is supported by the following authorities: 1 High Inj. 702; 1 Beach Mod. Eq. Jur. § 2; *Richards* v. *Dower, supra; Walker* v. *Emerson,* 89 Cal. 450; *Shepard* v. *Railway Co.,* 117 N. Y. 442; *Mudge* v. *Salisbury,* 110 N. Y. 413; *Wheelock* v. *Noonan, supra; Warren Mills* v. *New Orleans Seed Co.* (Miss.) 7 Am. St. Rep. 671, and note (s. c. 4 South. 298; *Connole* v. *Mining Co.,* (Mont.) 52 Pac. 263; *Williams* v. *Railroad Co.,* 16 N. Y. 97; *Poirier* v. *Fetter,* 20 Kan. 47; *Miller* v. *Lynch,* 149 Pa. St. 460; *Johnson* v. *City of Rochester,* 13 Hun 285; *Valentine* v. *Schreiber,* (Sup.) 38 N. Y. Supp. 417.

The case of *McGregor* v. *Mining Co.,* 14 Utah 47, and the decision of this court on a former appeal in this case (14 Utah 57), relied upon by defendant's counsel, I do not think are in conflict with the foregoing views and authorities. In each of these cases the appeal was taken from an order granting a temporary injunction, and before a hearing was had on the merits. In the case of *McGregor* v. *Mining Co.,* the defendant justified the trespass by virtue of certain alleged eminent domain proceedings begun and concluded by it, by virtue of which proceedings it claimed a right to construct the trench and lay the pipe line in question. In this case one of the defenses pleaded and relied upon by defendant was a license from the plaintiff, permitting it to lay and maintain its pipe line across and through plaintiff's mining claim. Under the issues thus formed in each of these cases, the court very properly set aside and reversed the order of the trial court granting an injunction pendente lite. The opinion in each of these cases was undoubtedly based on the theory that the defenses pleaded, in view of the affidavits

filed in behalf of defendant in each case to dissolve the injunction, would in all probability be supported by the evidence on the trial or final hearing. The trial court in this case having, on the final hearing, found adversely to the defendant on the issue of its right to occupy the premises in question for the purpose of maintaining its pipe line, an entirely different question is presented to this court from the questions disposed of on the former appeal.

I am of the opinion that the cause should be remanded to the lower court, with directions to enter judgment perpetually restraining defendant from continuing the trespass by maintaining its pipe line across and through plaintiff's premises.